UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY LOUISVILLE DIVISION
CIVIL ACTION NUMBER: 3:17-CV-00330-RGJ-CHL

RACHEAL ELIZABETH ANNE BUTRUM PLAINTIFF

v.

THE LOUISVILLE ZOO FOUNDATION, INC., LOUISVILLE METROPOLITAN GOVERNMENT DEFENDANTS

**PLAINTIFF'S RESPONSE TO DEFENDANT LOUISVILLE ZOO FOUNDATION, INC.'S MOTION FOR SUMMARY JUDGMENT**

* * * * * * * * *

Comes now the Plaintiff, by counsel, and for her Response to the Defendant Louisville Zoo Foundation, Inc.'s Motion for Summary Judgment, states as follows:

**FACTS**

**The Zoo and the Foundation are essentially one and the same, and the Foundation itself has claimed to be the Zoo and an agency of Metro Government.**

The Foundation's motion is found at PACER doc 60-1, the Foundation's memorandum in support. This pleading is in response.

On the first page of the Foundation's motion for summary judgment is the following, false, claim:

> The Foundation has no involvement with the Zoo's employment practices and has no role in the management of the Zoo's employees. Therefore, summary judgment is appropriate in the Foundation's favor.

At page 4 of the memorandum, PACER doc 60-1, the following, false, claim is made:

> The Foundation has no involvement in any aspect of the day-to-day operations at the Louisville Zoo.

At page 6 of the memorandum, PACER doc 60-1, the following, false, claim is made:

> Plaintiff's claims against the Louisville Zoo Foundation must be dismissed because her allegations have no factual connection to the Louisville Zoo Foundation's activities.

Again, at page 6 of the memorandum, PACER doc 60-1, the following, false, claim is made:

> The Defendants are separate entities under separate control, and the Foundation has nothing to do with the Zoo's operations other than to help generate private funding for them.

Again, at page 6 of the memorandum, PACER doc 60-1, the following, *correct,* claim is made:

> An entity ***completely unconnected*** to a plaintiff's employment cannot be liable for her alleged employment discrimination.

Emphasis by Plaintiff. The above statement is true, the corollary of which is "an entity connected to a plaintiff's employment can be liable for her alleged discrimination." That is the question: Is the Foundation connected to the Plaintiff's employment *in any way.*

At page 7-8 of the memorandum, PACER doc 60-1, the following, false, claim is made:

> [The Foundation] [] is not involved in the creation or enforcement of Zoo policies; it is not involved in the Zoo's operations and management; and it has little to no awareness of any of the Zoo's employment matters.

The Foundation's position is quite clear: It is not the Zoo; it has nothing to do with Zoo employment; or employment policies; etc. The have framed it thusly: if the Foundation is "completely unconnected" to the Plaintiff's employment, it can have no liability. Without conceding that point, the Plaintiff points out the Zoo and the Foundation are, in essence, the same entity, and a quick drive around the Foundation website[1] establishes multiple areas of cross pollenization. Rather than being what, in its motion, it says it is: an entity that exists solely to

[1] https://louisvillezoo.org/about-the-zoo/zoo-foundation-board/

raise money for the Zoo, it is in fact an overseeing entity, a supervisory entity, that like the hand on the cover of "The Godfather" is seen to hold all the strings to the puppet it controls.

First, the Plaintiff points out that she has alleged specific conduct implicating the Zoo Director, John Walczak, and that it was done to protect himself, the Zoo, *and the Foundation* from exposure to critique for the abuse aimed at the Plaintiff. Walczak did that while wearing two hats: Zoo Director and Board, Foundation Board, agent.

If one opens the Foundation website, one can click on any number of links.

One of the links is "Employment Opportunities." If one clicks on that link, one is led to a page with this information:

Welcome to the Louisville Zoo Human Resource Page. If you are interested in volunteering at the Zoo, please visit **Volunteer Opportunities**.

# SEASONAL EMPLOYMENT

**Seasonals can apply online.** **Click here to apply.**

## Department Positions

### Events

Crew Leader — One year of college pursuing an Events/Marketing career. Computer skills, event set-up and logistics.

### Horticulture

Zoo Aide — grass cutting, mulching, trimming, grounds maintenance. Must be 18 years of age and possess a valid driver's license.

### Guest Services

**Zoo Service Worker —** Set-up, take-down for events, safety & security, janitorial, crowd control, park cleaning, access control, basic computer skills for operating Point of Sale system and general labor. Must be a minimum of 16 years of age.

## Rides & Attractions

Splash Park Attendant — Crowd control, water quality testing, public safety, cleanliness of the park, and CPR/1st Aid Certified. Must be a minimum of 16 years of age.

**Rides & Attractions Operator —** Operates trains, trams, carousel, cart shuttles and Ropes Course; inspections & cleanliness of all attractions. Must be a minimum of 18 years of age and possess a valid driver's license.

## Animal Dept.

Zoo Service Assistant — assists keepers in diets, exhibit cleaning and enrichment of animal areas. Must have one year of college towards a degree related to animals and 1 year experience working with animals in an institutional setting. Must be 18 years of age.

## Education

**Education Instructor —** One year of college seeking an Education major and one year of experience working with children. Must be able to handle small exotic animals for educational purposes. CPR/1st Aid Certification required.

## Membership, Front Desk & Admissions

Zoo Service Clerk — All areas include basic computer operating skills and guest interaction. Some areas will require experience working w/money, balancing a cash drawer, operating a multiline switchboard and making PA announcements and radio announcements. Must be a minimum of 16 years of age.

**Minimum wage for 2018 is $10.10 hourly (Unless specified)**

**The Louisville Zoo is an Equal Opportunity Employer.**

# Rules, Requirements & Benefit

## Employee Requirements

- Customer service must be a priority to applicant applying
- A minimum of 16 years of age — *Some jobs may require 18 years of age)*
- Must be flexible to work days, nights, weekends, and holidays
- Some jobs require a valid driver's license
- Some Positions require CPR/ 1st Aide Certification, which is provided by the ZOO.

## Uniforms

Uniform Shirts are provided by the Zoo; however uniform pants and or shorts must be purchased at Shaheens at your expense before date of employment.

## Zoo Benefits

- The Louisville Zoo is a unique environment
- Discount in Gift Shop and Food areas with Zoo ID
- Free Admittance to Zoo while employed
- Free parking

# Full-Time & Part Time Positions

All full-time and part-time positions will be posted on the Louisville Government webpage at **louisvilleky.gov/HumanResources**

- **STAFF**
- **VOLUNTEER**
- **ZOO FOUNDATION BOARD**
- **FINANCIALS**
- **STRATEGIC PLAN**
- **MASTER PLAN**
- **ANNUAL REPORT**
- **ASSOCIATION OF ZOOS AND AQUARIUMS**
- **EMPLOYMENT OPPORTUNITIES**
    - SEASONAL EMPLOYEE APPLICATION 2018






From the above we see the Foundation is not so arm's length as it would have the Court believe. One seeking employment opportunity at the Zoo can actually apply online at the Foundation website.

If one clicks on the "Strategic Plan" link, one opens **Exhibit 1,** the Zoo's strategic plan, not the Foundation's, the Zoo's. The Zoo's strategic plan was created in conjunction with the

Foundation and posted on the Foundation's website, debunking the claims, above cited, that the Foundation has nothing to do with operations or employment.

If one clicks on the "Master Plan" link, one opens **Exhibit 2**, the Zoo's Master Plan Update from February, 2016. Page 2 of the Master Plan Updates lists the "Planning Participants". The entire Foundation Board is listed as "Planning Participants," and suddenly the relationship between the Zoo and the Foundation is looking less and less like an arm's length relationship, or, as the Foundation would have the Court believe, no relationship at all, and more like a loving embrace.

Recall, the Foundation, in its motion for summary judgment, looked this Court directly in the eye, so to speak, and represented the only function of the Foundation was to raise money for the Zoo. That representation was a misrepresentation; the Foundation is so much a partner with all aspects of operation of the Zoo the relationship is symbiotic. From the Master Plan we see the Foundation is part of planning the following, non-money-raising-things, along with the City and Zoo itself:

Page 3: The Foundation is part of planning the Zoo's vision. The Foundation is part of making memories for families. They are providing ecological education. The Foundation is involved with planning and implementing a number of new exhibits at the Zoo, and alteration and improvement of existing ones. The Foundation is involved with the creation of a new education hub.

Page 4, Introduction: The Foundation is involved with creating and implementing the Master Plan regarding the physical aspect of the Zoo in three area: Land use; land form, and circulation. At the end of the introduction the following language is found:

> Special thanks to the Louisville Zoo Core Planning Team,
> Zoo Staff, Zoo Foundation Board Members, Friends of the Zoo,

> and Metro Government. Through this ***collaborative*** process, your time, effort, and creative thinking have helped establish this vision for the Louisville Zoo, for the next ten years and beyond.

Emphasis by Plaintiff. We move from warm embrace to one and the same. All aspects of operations at the Zoo, including those that adversely affected the Plaintiff, are part of the Master Plan the Foundation helped create and participates in implementing.

Page 5: The Foundation is involved in creating and implementing projects involving infrastructure, strategic services, and attractions.

Page 6: The Foundation is involved in creating and participating in development of Zoo projects through 2025.

The Foundation's involvement and participation in all aspects of Zoo operation is clear from these pages forward.

If one clicks on "The Annual Report, 2016-2017", one sees no distinction is made between the Zoo and the Foundation. At page 3 of the Annual Report, the Zoo talks about fundraising it is doing, not the Foundation, and at page 12 all members of the Foundation are listed. At page 21 the following language is found:

> IN APPRECIATION Louisville Zoo leadership would like to recognize the many generous donors and sponsors who supported Zoofari! and Brew at the Zoo this year. These events, produced annually by dedicated members of the Friends of the Louisville Zoo Board, benefit capital projects and education initiatives at the Zoo.

The final page of the Annual Report merely states the Plaintiff's point that there is a unity of identify between the Zoo and the Foundation:

> The Louisville Zoological Gardens, a non-profit organization, the state zoo of Kentucky and an agency of Louisville Metro Government, is accredited by the Association of Zoos and Aquariums and the American Alliance of Museums.

So, from above, the Foundation itself, the Louisville Zoological Gardens, is claiming to have merely a unity of identify, but is also claiming to actually *be* the Zoo itself, "an agency of Louisville Metro Government."

From the 2011-2012 Financial Statement of the Foundation:

> The Organization's office is located in the offices of Louisville Zoological Garden, Metro Louisville. ***Metro Louisville donates the use of staff,*** facilities and equipment. The value of this donation is not readily determinable; therefore, it has not been included on the statement of activities.

**Exhibit 3.**[2] Emphasis by Plaintiff. The point of the above is that the Foundation is the Zoo; the staff of the Foundation is Zoo personnel that the City provides to the Foundation, including but not limited to the Zoo Director, Walczak. Why do we know that? Because the Foundation says so. If the Court will review **Exhibit 7**, information downloaded from the Kentucky Secretary of State website, it will see that the Foundation's purpose includes, *but is not limited to*, the provision of financial support for purchase of animals, construction of buildings and displays and equipment necessary for such programs, and that the Zoo Director, Walczak, is the Foundation's registered agent for process. Under any practical analysis, it is impossible to determine where the Foundation ends and the Zoo begins; there is a unity of identity and so much overlap, they are virtually indistinguishable.

## DISCUSSION OF LAW

### The Foundation's reliance on *Rivera v. Lankford* is misplaced and the Court should give it no weight, as the Kentucky Supreme Court ordered it not to published, meaning its citation by the Foundation is, technically, a violation of the Rules of the Kentucky Supreme Court.

[2] Not only is this an admission the two entities are one and the same, as far as daily functions, it is an admission of underreporting of income, as in, non-reporting of services provided by the Zoo to the Foundation.

The Foundation opens its legal argument, page 9 of the motion, with the case of Rivera v. Lankford, 2014 WL 2536914 (Ky. App. June 6, 2014). Of course, being a state case, as opposed to a United States Supreme Court case, it is not binding. The first clue that this was not good law is the fact that in 2018, it still has no S.W.3d citation. Going beyond this opinion, which the Foundation attached to its motion, one can track the case further up to the Supreme Court of Kentucky, *2014 SC 574*, to see that on 8/12/15 the Supreme Court ordered that it ***not be published.***

CR 76 (4) (c) states:

> Opinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court. Opinions cited for consideration by the court shall be set out as an unpublished decision in the filed document and a copy of the entire decision shall be tendered along with the document to the court and all parties to the action.

The err in citing the case is compounded by the Foundation's failure to note it is a "not to be published" case, as required by the rule.

Be that as it may, what the Kentucky Court of Appeals said in *dicta* in a non published case, is not binding on this Court. But, since the case has been raised, the Plaintiff will address it. The core facts, established by the discovery obtained hereto, are these:

1) Plaintiff was employed by the Zoo.

2) Plaintiff was sexually harassed by her immediate supervisor, who has engaged in similar conduct in the past, which was known by Walczak, the Director, who had sanctioned him before.

3) The Plaintiff experienced sexual discrimination, hostile work environment, and retaliation.

4) Walczak was not a Foundation member at the time of these event, but he attended every Foundation meeting, hosted them at the Zoo, and participated in them. Walczak wore two hats: Director of the Zoo (itself a direct employee of the Foundation), and agent of the Foundation (who paid the Zoo through its fundraising activities).

5) Walczak and the Zoo were beholden to the Foundation due to fundraising they did perform.

6) However, the Foundation's functions extended far beyond mere fundraising, going so far that at one point the Foundation identifies itself as the Zoo, as a Metro agency.

7) The Foundation functions through Zoo employees whose time is donated to the Foundation.

8) Despite the claim the Foundation functions through Zoo employees whose time is donated to the Foundation, the Foundation "pays" the Zoo, though fundraising it does for the Zoo.

9) Certain events at the Zoo, such as the Brew through the Zoo, are operated on Zoo grounds, but manned by Foundation personal and or directed by them.

Now, whether the Foundation has responsibility for the acts of the sexual harasser, or the persons who created a hostile work environment aside, Walczak's actions in manipulating the findings of human relations[3] were done to protect himself, the Zoo *and* the Foundation, which is a distinction Rivera did not deal with. In Walczak's conduct he acted as an agent of the Foundation.

---

[3] The original and altered human relations investigative findings are found in the record before the Court. If the Court reviews the Complaint's exhibits, it will see, Exhibit 4, dated February 3, 2017, the original investigative findings, it will see HR substantiated almost everything the Plaintiff has complained of. *See* PACER doc. 1-4. Exhibit 4 has never been provided to the Plaintiff from the Zoo directly, and was buried after Walczak intervened to alter the findings. The Plaintiff only obtained Exhibit 4 via an Open Records request, because Walczak and the Zoo wanted to keep it secret. If the Court will review Exhibit 6 of the Complaint, it will see the investigative findings after Walczak intervened to change the investigative findings. *See* PACER doc. 1-6. Exhibit 6 contains multiple false statements, and is a cover up, initiated by Walczak to protect, at least in part, the Foundation, from a substantiated finding that Rich Williams has sexually harassed her—beyond doubt as the transcript of his admission of same makes clear—*see* PACER doc. 21-1, as well as William's deposition, **Exhibit 4**, and that the Plaintiff was the victim of a hostile work environment and retaliation—Williams, Stear, Powers depositions, **Exhibits 4, 5 & 6**, respectively.

The Plaintiff would further point out that the finding in Rivera may have simply been a result of poor lawyering. Maybe better lawyers would have brought better facts before the trial court, as has been done here. Certainly, the Plaintiff should not suffer because another plaintiff in an unrelated case, with distinctly different facts, was unable to establish a factual contention. The question is: what duty did the Foundation owe the Plaintiff? The answer is: not to allow one under its direct control and influence, Walczak, to manipulate a human resources investigation for the Foundation's benefit. We are here, now, in this suit, and this situation, because John Walczak chose to intervene in the downtown human relations investigation into these matters, and manipulate the findings from "there is problem, here is how we fix it" to "there is no problem," or worse, "Mrs. Butrum is the problem." A clearer case of cover up and retaliation will not be found. Mr. Walczak, and the Foundation, could not allow for an admission that something needed to be fixed, because that was an admission something was broken, and that admission was not something the Zoo and the Foundation could tolerate. John Walczak is the Foundation's pet, and the Foundation's pet intervened to alter the results of the initial investigation, to change them. Had he not done that, we would likely not be here, but, as he did do it, in part to shield his master, the Foundation, the Foundation must now stand accountable.

**In Re: Vicarious liability, Respondeat Superior, and Master-Servant Doctrine**

The Foundation's main defense can be summarized as: "We only exist to raise money for the Zoo." To this the Plaintiff would respond: "Yes, the Foundation raises money for the Zoo, but is also its partner in planning every single project the Zoo is set to engage in, for the next, coming, decades." The plans for the present and future of the Zoo are not published without the consultation and consent of the Foundation. The relationship between the Zoo and the Foundation are not distinct, or even arm's length; it is a symbiotic relationship both ways,

one does not exist without the other. To the extent the Foundation raises money for the Zoo, it should be seen as they employer of the Zoo, and the Zoo should be seen as the employee. Walczak wears two hats, one as Director of the Zoo, one as agent of the Foundation.

Stated the Kentucky Supreme Court in Grubb v. Smith, 532 S.W.3d 409 (2017), at 436:

> Consistent with Section 343, it has long been the rule in Kentucky that " an agent is personally liable for his own tortuous acts even though performed within the scope of his employment and under conditions which impose liability upon the principal also." Carr v. Barnett, 580 S.W.2d 237, 240 (Ky. App. 1979) (citing Kentucky-Tennessee Light and Power Co. v. Nashville Coal Co., 37 F.Supp. 728 ([W].D. Ky. 1941)). Indeed, " it has long been the law of this jurisdiction that the party harmed can look for reparation from the agent only, without the necessity of proceeding against the principal." *Id.* (citing Poole v. Adkisson, 31 Ky. 110 (Ky. 1833)); *see also* Enos v. Kentucky Distilleries & Warehouse Co., 189 F. 342, 346 (6th Cir. 1911) (" [I]n Kentucky, the servant whose negligent act creates the liability of the corporation may, as a matter of right be joined as defendant with the corporation." ); Cohen v. Alliant Enterprises, Inc., 60 S.W.3d 536, 539 (Ky. 2001) (" [A] plaintiff may bring suit and recover from the principal under a vicarious liability theory without first filing suit and getting a judgment against the agent" or may " sue[ ] both the principal and the agent together." ); Brown v. Ellis, 40 Conn.Supp. 165, 484 A.2d 944, 946-47 (Conn. Super. 1984) (citing Deaktor v. Fox Grocery Co., 332 F.Supp. 536, 542 (W.D. Pa. 1971), *aff'd*, 475 F.2d 1112 (3d Cir. 1973)) (" Under principles of agency law, an agent may be individually liable for torts committed by him, even though the agent contends that such acts were committed on behalf of the principal." ); Conn v. Markwest Hydrocarbon, Inc., 2006 WL 782728 at **2-3 (E.D. Ky. Mar. 27, 2006) (" Kentucky law permits servants or employees to be sued personally for alleged negligence in the course and scope of their duties for the principal or employer." ); Terry v. Jackson, 19 Fed.Appx. 377, 379 (6th Cir. 2001) (" There is no authority under Kentucky law that an individual is not jointly and severally liable for torts committed within the scope of employment." ).

Similarly, in Wheeler v. Frito-Lay, Inc., the presiding federal district court stated as follows:

> However, the fact that a judgment may be entered against an employer does not absolve the employee of liability for his acts; rather, the doctrine of respondeat superior operates to establish a joint and several liability

> between both the employer and the employee. Granquist [v. Crystal Springs Lumber Co., 190 Miss. 572, 1 So.2d 216, 218 (Miss. 1941)]. While the liability of an employee under respondeat superior may not be individual in the sense that the employee is the only party responsible for the payment of any judgment, the employee nevertheless remains liable for the total amount of any judgment, though such liability will be joint and several with his employer. 743 F.Supp. 483, 485-86 (S.D. Miss. 1990) (emphasis added); *see also* Southard v. Belanger, 966 F.Supp.2d 727, 742-43 (W.D. Ky. 2013) (citing Bowen v. Gradison Const. Co., 224 Ky. 427, 6 S.W.2d 481, 482-83 (Ky. 1928)) (" Under Kentucky law, an employer is jointly and severally liable for the negligence of any employee who is acting within the course and scope of employment at the time of the negligence." ).

In Easterling v. Man-O-War Automotive, 223 S.W.3d 852 (CA 2007), at 855, the Kentucky Court of Appeals stated:

> To hold an employer vicariously liable for the actions of an employee, ***the doctrine of respondeat superior requires a showing that the employee's actions were in the course and scope of his employment and in furtherance of the employer's business.*** As was noted in Sharp v. Faulkner, 292 Ky. 179, 166 S.W.2d 62, 63 (1942), the respondeat superior doctrine has no application when an employee engages on a "personal and private trip" which has "no connection with his masters' business."

Emphasis by Plaintiff.

In Papa John's Intern., Inc. v. McCoy, 244 S.W.3d 44, (2007), the Kentucky Supreme Court stated:

> In this Court's most recent case addressing the scope of employment issue, in a unanimous opinion, we considered with approval the Tentative Draft of the Third Restatement of Agency, which rejected scope of employment formulations based on assessments of foreseeability, instead focusing on the employee's purpose. Since the Patterson opinion, the American Law Institute has written the Restatement (Third) of Agency § 7.07 (2006), entitled "Employee Acting Within Scope of Employment." It is as follows:

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
>
> (3) For purposes of this section,
>
> (a) an employee is an agent whose principal controls or has the right to control the manner and means
>
> of the agent's performance of work, and
>
> (b) the fact that work is performed gratuitously does not relieve a principal of liability.
>
> This general rule is consistent with the standard advanced by Prosser and Keeton-as noted in the Patterson opinion-in their treatise on tort law: "[I]n general, ... the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." Thus, if the servant "acts from purely personal motives ... which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." This approach "conforms to the economic theory of vicarious liability ... because when the employee acts for solely personal reasons, the employer's ability to prevent the tort is limited."

Kentucky's High Court, the Court of Appeals, in 1971, in the case of Crowe v. Miller, 467 S.W.2d 330 (1971) stated:

> The appellants contend that the ruling in Sam Horne Motor and Implement Company v. Gregg, Ky., 279 S.W.2d 755, is authority in their behalf on the master-servant question. There a salesman, employed by a used-car lot owner, took a vehicle home, with a view to demonstrating the car to a prospective buyer the next morning. There was evidence that the company rule forbade demonstration of cars after 5:30 p.m. ***The court held that a submissible issue was created as to existence of a master-servant relationship, since there was ample evidence that the employee's use of the car at the time of the accident was of vital importance in furthering the business of the employer.*** But, there the evidence showed that the tort-feasor intended to and purported to act in furtherance of the employer's business. There is no such showing here.

> In Wilson v. Deegan's Adm'r, 282 Ky. 547, 139 S.W.2d 58, the court noted the usual rule in this language:
>
> 'It must be conceded at the outset that the master is not liable for the negligent acts of his servant while driving the master's car for his own purposes. Ordinarily, the master's liability rests upon the doctrine of respondeat superior. Unless the servant at the time of the accident was acting within the scope of his employment and in the furtherance of the master's business the latter is not liable. (Citations omitted.)' *Id.* 139 S.W.2d 60.
>
> The court recognized an exception to the rule in that case, however. There the master loaned a car to the servant to enable the servant to make a speedy round trip to and from lunch. The court concluded that in those circumstances a submissible issue was made on the master-servant relationship, since the jury could infer that the overall purpose of using the car was in furtherance of the master's purposes. If such a circumstance were present in these cases, the rule followed in Wilson would apply. But, nothing in this record suggests that the master's interests were being promoted by Dennis' undertaking to procure transportation to his home after working hours. That transportation was not expected to enlarge the time of Dennis' availability at the used-car lot, as was the case in Wilson. The trial court correctly directed a verdict for Miller in these circumstances.

Emphasis by Plaintiff.

The Foundation is a defendant here because John Walczak was engaged, as their agent, in furtherance of their business. To put it another way, the Zoo, who is on the payroll of the Foundation, via John Walczak, the Zoo's Director, and agent of the Foundation (which has stated multiple times in publicly published document that it *is* the Zoo), acted to cover up and manipulate the initial downtown HR investigation findings and recommendations in order to protect the Zoo *and* the Foundation. Neither Walczak, the Zoo, or the Foundation could tolerate tarnishment of their public reputations by a finding—and this was the original finding, and is in the record before the court—that the Plaintiff had been sexually harassed, and that a hostile work environment could not be tolerated.

As stated in Crowe v. Miller, 467 S.W.2d 330 (1971), *Id*, this issue is imminently submissible to a jury. At the time of trial the question for the jury will be: When John Walczak intervened in the HR investigation, after receiving their initial findings that supported the Plaintiff's claims, in order to alter the findings, so that no findings of sexual harassment and hostile environment were included in the final findings, was he doing to in support of the Foundation, or doing so only for himself? If the jury finds he only acted to serve his own, personal, interests, the Foundation will have no liability. However, if he acted on behalf of, to serve, or "in furtherance" of the Foundation's interests, the Foundation will be found liable for his conduct.

For the foregoing reasons, the Plaintiff prays the Court will Overrule the Motion for Summary Judgment, and allow this issue to proceed to jury trial.

Respectfully submitted,

s/ Timothy Denison
TIMOTHY DENISON
235 South Fifth Street
The Third Floor
Louisville, Kentucky 40202-3226
(502) 589-6916; (FAX) 568-6919

CERTIFICATE OF SERVICE

I certify that a copy of this pleading was sent to all parties entitled to receive service via CM/ECF/PACER filing.

s/ Timothy Denison
Timothy Denison