UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RACHEAL ELIZABETH ANNE BUTRUM                                        Plaintiff

v.                                                    Civil Action No. 3:17-cv-330-RGJ-CHL

THE LOUISVILLE ZOO FOUNDATION, INC.,
LOUISVILLE METROPOLITAN GOVERNMENT                                   Defendants

**MEMORANDUM OPINION & ORDER**

Defendant Louisville Zoo Foundation, Inc. has moved for summary judgment. [DE 60]. Briefing is complete, and the motion is ripe. For the reasons below, the Motion for Summary Judgment [DE 60] is **GRANTED**.

### I.  BACKGROUND

Defendant Louisville Metropolitan Government ("Louisville Metro") employed Plaintiff Racheal Elizabeth Anne Butrum ("Butrum") as Maintenance Supervisor at the Louisville Zoo (the "Zoo"), an agency of Louisville Metro. [DE 1, Compl. ¶¶ 1, 4]. Butrum was the first female Maintenance Supervisor at the Zoo. [*Id.* at ¶ 4]. Butrum alleges that during her employment she was subject to sexual harassment, that her supervisors undermined her authority and tolerated sexist behavior towards her by her subordinates, that she was treated differently than male employees, and that the Director of the Zoo intervened in a human resources investigation and falsified the findings. [*Id.* at ¶ 4–39].

Butrum sued both the Louisville Zoo Foundation, Inc. ("Foundation") and Louisville Metro. [DE 1, Compl. ¶¶ 1–2]. She alleges Sexual Harassment (Count 1), Hostile Work

1

Environment (Count 2), and Sexual Discrimination (Count 3), in violation of Title VII of the Civil Rights Acts of 1964, as well as Retaliation (Count 4) in violation of 42 U.S.C. § 12203, Fraud and Conspiracy to Commit Fraud (Count 5) in violation of 17 C.F.R. § 23.410, violation of the Whistleblower Act, 5 U.S.C. § 1201 (Count 6), violation of the Open Records Act, 5 U.S.C. § 552 (Count 7), Intentional Infliction of Emotional Distress ("IIED")(Count 8), Negligent Infliction of Emotional Distress ("NIED")(Count 9), Defamation (Count 10), and Punitive Damages (Count 11). [DE 1, Compl. ¶¶ 41–72]. The complaint does not separate the Foundation and Louisville Metro and all eleven counts in Butrum's complaint are against "Defendants." [*Id*.]

The Foundation moves for summary judgment on all claims. [DE 60 at 1335]. The Foundation is a nonprofit, non-governmental entity that raises funds for the Zoo and promotes awareness of Zoo causes. [DE 60-2, 60-3]. The Foundation presents evidence that it is not involved with the Zoo's employment practices or management of the Zoo's employees. [DE 60-3, 60-4, 60-5]. The Foundation thus argues it cannot be liable for Butrum's claims. [DE 60 at 1340–42]. Butrum argues the Foundation and Zoo are essentially one entity. [DE 70 at 1615–27]. Butrum further argues even if the Foundation and Zoo are separate entities, the Foundation is the Zoo's "employer," and that the Zoo's Director acted as an agent of the Foundation when he allegedly manipulated the result of a human resources investigation into Butrum's claims. [DE 70 at 1627–32]. For these reasons, Butrum asserts the Foundation is sufficiently connected to the Zoo to be liable for her claims.

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party cannot rest on its pleadings to avoid summary judgment but must support its claims with evidence. *Id*. Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

### III. DISCUSSION

a. <u>Title VII Claims and ADA Retaliation Claim</u>

Plaintiff's Title VII claims and ADA retaliation claim against the Foundation must be dismissed. "Title VII provides that 'it shall be an unlawful employment practice for an **employer**' to discriminate on the basis of race, color, religion, sex, or national origin. A person aggrieved by such discrimination may bring a civil action against the '**employer**.' " *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (citing 42 U.S.C. §§ 2000e-2(a), 2000e-5(b) ) (emphasis added). The ADA retaliation provision, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." *Id*. This provision is much like Title VII's prohibition of retaliation. *See* 42 U.S.C. § 2000e–3(a). Retaliation claims under the ADA use the same framework as a retaliation claim under Title VII. *Johnson v. Cleveland City School Dist.,* 344 Fed. App'x 104, 113 (6th Cir.2009) (citing *Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir.1997)). Butrum's Title VII claims and ADA retaliation claim will thus be analyzed together.

Here, the Foundation was not Butrum's employer. Louisville Metro employs Zoo staff, including Butrum. [DE 60-8]. That said, an entity which is not the plaintiff's formal employer may be treated as if it were the employer for employment laws such as Title VII under either the single-employer doctrine or joint employer doctrine. *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011).

Under the single-employer doctrine, "two nominally independent entities are so interrelated" that all the employees of one are attributed to the other. *Sanford*, 449 F. App'x at

4

491 citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir.1997). In determining whether to treat two entities as a single employer, courts examine four factors: (1) interrelation of operations, *i.e.*, common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors, and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 993–94.

According to Louisville Metro Code of Ordinance §30.22, the Foundation is organized as a separate entity from the Zoo. [DE 60-5]. The Foundation is a 501(c)(3) nonprofit organization. [DE 60-4]. The Foundation's mission statement is "to provide financial support for the Louisville Zoo for teaching, research and service programs, the construction of exhibits and displays and the purchase of equipment and supplies for the animals of the Louisville Zoo." [DE 60-4 at 1340]. The Foundation submits the affidavit of Sheryl G. Snyder, Vice Chair of the Board of Trustees of the Foundation, which sets forth the structure and activities of the Foundation. [DE 60-7, at 1391–92]. The Foundation is composed of members appointed by the Louisville Mayor, none of whom are employees of Louisville Metro. [*Id*.] The Foundation is not involved in the Zoo's day-to-day operations, neither creates nor enforces Zoo policies, and does not manage Zoo employees. [DE 60-7, at 1391–92]. This evidence shows that the Zoo and Foundation do not share common management, directors, and boards, and that the Foundation has no control over the Zoo's labor relations and personnel. While the Foundation has an office located within the Zoo donated by Metro Louisville [DE 70-4], it is not involved in the Zoo's employment practices. Under these circumstance, the Foundation is not an "employer" for purposed of Title VII under the single-employer doctrine.

Butrum fails to rebut the Foundation's evidence on this issue. She directs the Court to the Louisville Zoo's website, copying and pasting portions of that site related to Zoo employment, exhibits, membership, and conservation. [DE 70 at 1616–21]. Even if it were appropriate to take judicial notice of the website, it does not support Butrum's claim. The Zoo website includes a sub-page about the Foundation, as well as links to the Zoo's master plan and strategic plan by Louisville Metro. [DE 70-1, 70-2]. The Zoo's master plan, which the Foundation participated in, relates to construction of exhibits. [*Id*.] The master plan not relate to employment practices. The strategic plan for the Zoo by Louisville Metro does not mention the Foundation. [DE 70-1].

Nor can the Foundation be considered an "employer" of Butrum for Title VII purposes under the joint employer doctrine. Under the joint employer doctrine, one entity is the joint employer of another entity's formal employees, if the two "share or co-determine those matters governing essential terms and conditions of employment." *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir.1985) (internal quotation marks omitted). The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance. *Sanford*, 449 F. App'x at 492. As discussed above, the Foundation is not involved in the day-to-day operations of the Zoo, including employment matters. [DE 60-7, at 1391–92]. Butrum offers no evidence that the Foundation shared or co-determined the terms or conditions of any staff's employment, including hers, or that the Foundation directs and supervises the performance of staff. [DE 70].

None of evidence or information presented by Butrum, even construed in a light most favorable to her, shows that the Foundation is an "employer" as contemplated under Title VII.

The Foundation is thus entitled to judgment as a matter of law and Butrum's Title VII claims in Counts 1, 2, 3, and ADA Retaliation claim in Count 4 of her Complaint must be dismissed against the Foundation.

b. Butrum's Remaining Claims

Butrum's Fraud and Conspiracy to Commit Fraud,[1] Whistleblower Act, Open Records Violations, IIED, NIED, Defamation, and Punitive Damages claims against the Foundation must also be dismissed. Butrum argues that the Foundation may be held vicariously liable under these claims because the Zoo's Director, John Walczak ("Walczak"), was acting as agent of the Foundation. [DE 70 at 1627–32].[2] Yet as discussed below, Butrum has presented no evidence connecting the Foundation or its fundraising activities with these claims.

Under Kentucky law, an agency is a fiduciary relationship resulting from manifestation of consent by the principal to the agent, that the agent may act on the principal's behalf and subject to her control; and consent by the agent to so act. *McAlister v. Whitford*, 365 S.W.2d 317, 319 (Ky. 1962). Whether an agency relationship exists between two entities generally depends on the right of control one entity exercises over the other. *See, e.g., Ky. Unemployment Ins. Commission v. Landmark Cmty. Newspapers of Ky.*, 91 S.W.3d 575, 579–580 (Ky. 2002) ("in determining whether [an agency relationship exists], we have held that the chief criterion is the

---

[1] Butrum cites 17 C.F.R. 23.410 in her fraud claim, but this regulation does not apply to the case. *See* 17 C.F.R. 23.410 (addressing prohibition on fraud by "swap dealers" under the Commodity Futures Trading Commission). That said, "[t]he form of the complaint is not significant if it alleges facts on which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003); *see also Quinn–Hunt v. Bennett Enters.*, 122 Fed. App'x 205, 207 (6th Cir. 2005) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.")

[2] Butrum also argues the Foundation is the Zoo's employer because "to the extent [it] raises money for the Zoo . . ." [DE 70 at 1628]. Butrum cites no legal authority in support of this argument.

7

right to control the details of the work.") (internal quotation and citation omitted). In *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44 (Ky. 2008), the Kentucky Supreme Court further developed the traditional agency law in Kentucky in a commercial setting, holding that "[a] franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm." *Id*. at 56. The *Papa John's* case concerned a franchisor-franchisee relationship, but the Kentucky Supreme Court did not state that its holding was limited to franchisor-franchisee business relationships. And "[t]he burden of proving agency is on the party alleging its existence." *Wright v. Sullivan Payne Co.,* 839 S.W.2d 250, 253 (Ky. 1992).

Here, as discussed above, the Foundation and its fundraising activities have no connection with Butrum's allegations, and the Foundation is not involved with the Zoo's operations, management, or human resources. [DE 60-7, at 1391–92]. There is no evidence that it controlled or had the right to control the daily operation of the specific aspect of the Zoo alleged to have caused the harm in Butrum's claims for Fraud and Conspiracy to Commit Fraud, Whistleblower Act, Open Records Violations, IIED, NIED, Defamation, and Punitive Damages. Nor does Butrum present evidence that Walczak, the Zoo Director, acted as the Foundation's agent or subject to the Foundation's control regarding the conduct Butrum alleges.

The Foundation also had no duty as it relates to Butrum's NIED claim. Under Kentucky law, whether a party owes a duty is question of law and there can be no negligence without a duty. *Jenkins v. Best*, 250 S.W.3d 680, 688, 691 (Ky. App. 2007) (liability will not be imposed "unless we have first found circumstances giving rise to a relationship of some kind in which one

particular party owed a duty to another particular party."); *Warren v. Winkle*, 400 S.W.3d 755, 758 (Ky. App. 2013) (citation omitted). Again, Butrum presents no evidence suggesting the Foundation had a relationship with the Zoo that would create a duty to a Zoo employee regarding employment matters. *See Rivera v. Lankford*, No. 2012-CA-002057-MR, 2014 WL 2536914 (Ky. App. June 6, 2014) (unpublished) (holding Zoo Foundation, a nonprofit organization acting, in large part, as the fundraising arm for public zoo operated by merged urban-county government, owed no duty to passengers injured in small-gauge train derailment at zoo; although foundation's bylaws suggested some power to direct zoo employees, foundation had no hand in actual day-to-day operation of zoo or zoo trains).

Even construing Butrum's arguments in a light most favorable to her, she fails to demonstrate that the Foundation has any connection to her remaining claims that would allow vicarious liability or show a duty on its part to her. Thus, the Foundation is entitled to judgment as a matter of law and Butrum's remaining claims in Counts 5, 6, 7, 8, 9, 10, and 11 of her Complaint must be dismissed against the Foundation.

## IV. CONCLUSION

For the reasons stated above, the Foundation's Motion for Summary Judgment [DE 60] is **GRANTED** and Plaintiff Butrum's claims against the Foundation are **DISMISSED WITH PREJUDICE**.

Rebecca Grady Jennings, District Judge
United States District Court

September 13, 2019