UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RACHEAL ELIZABETH ANNE BUTRUM                                    Plaintiff

v.                                        Civil Action No. 3:17-cv-330-RGJ-CHL

LOUISVILLE METROPOLITAN GOVERNMENT                              Defendant

## MEMORANDUM OPINION & ORDER

Defendant Louisville Metropolitan Government ("Louisville Metro") moves for partial summary judgment. [DE 61]. Briefing is complete, and the motion is ripe. For the reasons below, the Motion for Summary Judgment [DE 61] is **GRANTED** in part and **DENIED** in part. Further, Louisville Metro's motion for trial date scheduling conference [DE 99] is **GRANTED** and the parties must to contact Magistrate Judge Lindsay to schedule a conference.

## I.    BACKGROUND

Defendant Louisville Metropolitan Government ("Louisville Metro") employed Plaintiff Racheal Elizabeth Anne Butrum ("Butrum") as Maintenance Supervisor at the Louisville Zoo (the "Zoo"), an agency of Louisville Metro. [DE 1, Compl. ¶¶ 1, 4]. Butrum was the first female Maintenance Supervisor at the Zoo. [*Id.* ¶ 4]. Butrum alleges that during her employment she was subject to sexual harassment, that her supervisors undermined her authority and tolerated sexist behavior towards her by her subordinates, that she was treated differently than male employees, and that the Director of the Zoo intervened in a human resources investigation and falsified the findings. [*Id.* ¶ 4–39].

1

Butrum sued Louisville Metro.[1] [DE 1, Compl. ¶¶ 1–2]. She alleges Sexual Harassment (Count 1), Hostile Work Environment (Count 2), and Sex Discrimination (Count 3), in violation of Title VII of the Civil Rights Acts of 1964, as well as Retaliation (Count 4) in violation of 42 U.S.C. § 12203, Fraud and Conspiracy to Commit Fraud (Count 5) in violation of 17 C.F.R. § 23.410, violation of the Whistleblower Act under 5 U.S.C. § 1201 (Count 6), violation of the Open Records Act, 5 U.S.C. § 552 (Count 7), Intentional Infliction of Emotional Distress ("IIED")(Count 8), Negligent Infliction of Emotional Distress ("NIED")(Count 9), Defamation (Count 10), and Punitive Damages (Count 11). [DE 1, Compl. ¶¶ 41–72].

Louisville Metro moves for summary judgment on Counts 5-11. [DE 61]. Louisville Metro also moves for partial summary judgment on Counts 1-4 to the extent that those counts stem from the alleged sexual harassment of Butrum by former Zoo employee Rich Williams ("Williams"), arguing any claim based on those facts are barred by the statute of limitations. [DE 61]. Plaintiff responded [DE 73], and Louisville Metro replied, [DE 76].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must show that there are no genuine issues of material fact and that it is legally entitled to judgment. *Provenzano v. LCI Holdings, Inc*., 663 F.3d 806, 811 (6th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Then, the nonmoving party must "present sufficient evidence to permit a reasonable jury to find in its favor." *Pierson v. QUAD/Graphics Printing*

---

[1] Butrum also sued the Louisville Zoo Foundation, but those claims were dismissed. [DE 100].

*Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986)).

Factual differences are not material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Anderson,* 477 U.S. at 252. The ultimate question is "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving] plaintiff is entitled to a verdict." *Id.* The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). Under Rule 56(c)(1)(a)-(b), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:"

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

Even though Louisville Metro styles its motion as for summary judgment, the motion does not include a statement of undisputed and disputed facts with citation to the record as required by Rule 56(c). The Court notes how difficult it is to consider Louisville Metro's motion for summary judgment when this initial burden is not met. Further, some of Louisville Metro's arguments present as motions to dismiss under Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) is not

appropriate at this stage of the proceedings as Louisville Metro filed an answer and the pleadings are closed. Instead, Louisville Metro's arguments are more appropriately classified as motions for judgment on the pleadings under Fed. R. Civ. P. 12(c). Rule 12(c) provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The Court determines a motion for judgment on the pleadings under the same standard of review as a motion to dismiss under Rule 12(b)(6). *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). The only difference between Rule 12(c) and Rule 12(b)(6) is the timing. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer.

On a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and determines whether the plaintiff can prove any set of facts that would entitle him to relief. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). To survive a motion to dismiss, a complaint must contain more than "a formulaic recitation of a cause of action's elements"; there must be "enough facts to state a claim to relief that is plausible," *i.e.* "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 167 (2007).

## III.    DISCUSSION

### A.  Fraud

While Butrum cites 17 C.F.R. 23.410 in her claim titled "Fraud and Conspiracy to Commit Fraud," this regulation does not apply. *See* 17 C.F.R. 23.410 (addressing prohibition on fraud by "swap dealers" under the Commodity Futures Trading Commission). Butrum concedes this statute

is inapplicable. [DE 73 at 2086.]. That said, "[t]he form of the complaint is not significant if it alleges facts on which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003); *see also Quinn–Hunt v. Bennett Enters.*, 122 Fed. App'x 205, 207 (6th Cir. 2005) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.").

Louisville Metro argues Butrum's fraud claim fails to state a claim upon which relief can be granted. [DE 61-1, at 1462]. Butrum argues she adequately pled a claim for "fraudulent misrepresentation"[2] under Kentucky common law, which requires the claimant to plead six elements: "(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention of inducing plaintiff to act, or that it should be acted upon by the plaintiff; (5) that plaintiff [Butrum] acted in reliance upon it; and (6) that plaintiff [Butrum] thereby suffered injury." *Cresent Grocery Co. v. Vick*, 240 S.W. 388, 389 (Ky. 1922)(emphasis added). Fraud based claims are subject to Fed. R. Civ. P. 9(b). *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc*., 683 F.3d 239, 247 (6th Cir. 2012). Under Rule 9(b), a plaintiff must state "with particularity the circumstances constituting fraud . . ."

 Buturm contends that paragraphs 35, 36, 37 and 38 of her Complaint allege facts on which relief can be granted, even though the claim cited to an inapplicable statute. The Complaint alleges a written memorandum from Kate Dunn ("Dunn")(Metro Human Resources) to the Zoo's Director, John Walczak ("Walczak") that confirmed "Plaintiff's claims were substantiated." [DE 1 at 16,

---

[2] Butrum does not argue that she is asserting a fraud-by-omission or fraudulent concealment claim. Butrum is the master of her claim.

Compl. ¶ 34]. However, Butrum asserts that Walczak "made a decision to prevent publication of the written finding, to attempt to change them, and alter them, 180 degrees, to cover up and bury the investigations." [DE 1 at 17, Compl. ¶ 35]. Butrum also asserts that the version given to her "omitted the four pages of substantiated findings originally given to Walczak," "reported false findings," and added "nuances" requested by Walczak. [DE 1 at 18, ¶¶ 37–38]. Butrum attaches to her complaint the first version of the memorandum [DE 1–4], the version given to Butrum [DE 1–5], and the final version [DE 1–6].

Butrum fails to plead a claim of fraudulent misrepresentation. Under Kentucky law, a claimant may establish "detrimental reliance" for fraudulent misrepresentation "when he acts or fails to act due to fraudulent misrepresentations." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 469 (Ky. 1999) (emphasis added) (citing 37 Am. Jur. 2d Fraud and Deceit, § 225 (1969)). "A person is entitled to damages resulting from inaction when an untrue statement is made with the intent to induce that person to refrain from acting so long as it can be demonstrated that the false statement produced the inaction." *Id.* Even assuming Butrum sufficiently alleges that the statement in the report was a false material representation and known to be false or made recklessly, Butrum does not allege that the misrepresentation was intended to induce her to act or not act. Moreover, Butrum does not claim that she acted, or refrained from acting, in reliance upon the misrepresentation. Thus taking her allegations as true, she asserts no set of facts that would plausibly entitle her to relief and her fraud claim is dismissed.

Even if Butrum's claim passed the pleading standard, it would fail as a matter of law. Plaintiff admits as in her in her Response to the Motion for Partial Summary Judgment that she

"reacted in reliance on the misrepresentation, albeit not in the way intended." [DE 73 at 2088].

She states that the report was altered

> to induce the Plaintiff to do nothing, to simply stop complaining, and to take it, and to protect Walczak, the Zoo and the Foundation. **Though that was its intended effect, it had to opposite effect, because it motivated the Plaintiff to seek help** outside the bound of the City, and she moved her complaints to the EEOC.

[DE 73 at 288, n.2]. Thus, Butrum did not rely on the alleged fraudulent misrepresentation. When "it appears absolutely clear from the record that the party did not or could not rely justifiably on the communication, summary judgment may be appropriate." *Thomas v. Schneider*, No. 2009-CA-002132-MR, 2010 WL 3447662, at *4 (Ky. App. Sept. 3, 2010) citing *Ann Taylor, Inc. v. Heritage Ins. Services, Inc.*, 259 S.W.3d 494 (Ky. App. 2008). The Restatement (Second) of Torts § 541, cited favorably by the Kentucky Court of Appeal in *Thomas*, provides that one to whom a fraudulent misrepresentation is allegedly made "is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." *Id.,* citing Restatement (Second) of Torts § 541 (1977). Thus, summary judgment is granted in favor of Louisville Metro on Butrum's fraud claim.

a. Whistleblower Act

Butrum cites 5 U.S.C. 1201 in her claim titled "Whistleblower Protection Act" but this Act only applies to federal employees. 5 U.S.C. § 2302(b)(8). Butrum does not dispute that this statute is inapplicable. [DE 73 at 2089]. As noted above, if Butrum has alleged facts on which relief can be granted, it is possible her claim may proceed despite failing to identify the correct legal theory. *Gean*, 330 F.3d at 765; *see also Quinn–Hunt,* 122 Fed. App'x at 207. Louisville Metro argues Butrum fails to state a claim upon which relief can be granted. [DE 61-1 at 1463].

Butrum argues she has presented a claim under Kentucky's Whistleblower Act, codified at KRS § 61.101 et seq. [DE 73 at 2089]. For Butrum to make a claim under the Whistleblower Act, she must allege that:

(1) the employer [Louisville Metro] is an officer of the state;

(2) the employee [Butrum] is employed by the state;

(3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and

(4) the employer [the Zoo] took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.

*Davidson v. Commonwealth, Dep't of Military Affairs,* 152 S.W.3d 247, 251 (Ky. App. 2004). In addition, the plaintiff must show that "the disclosure was a contributing factor in the personnel action." *Id.*

Louisville Metro argues that Butrum cannot meet the first two elements of a claim because it is not an "employer" under the Whistleblower Act. [DE 61-1 at 1464]. Under Kentucky's Whistleblower Act "employers" are defined as "the Commonwealth of Kentucky or any of its political subdivisions." KRS 61.101(2). In 2012, the Kentucky Supreme Court held that cities are not "political subdivisions" under the Whistleblower Act, and thus city employees are not covered by the Whistleblower Act. *Wilson v. City of Cent. City*, 372 S.W.3d 863, 870 (Ky. 2012). *Wilson* noted that the analysis under sovereign immunity jurisprudence is relevant to determining whether other entities are "political subdivisions" and cited with approval *Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp.*, 295 S.W.3d 91, 96 (Ky. 2009), which addressed sovereign immunity, as instructive on how to deal with entities that fall into "gray areas."

In *Comair*, the Court stated that the test to determine immunity status focuses first on "whether the entity exercises a governmental function, which [Berns ] explains means a 'function integral to state government.'" *Comair,* 295 S.W.3d at 99 (citing *Kentucky Ctr. for the Arts v. Berns*, 801 S.W.2d 327, 332 (Ky.1990)). Further, "[t]he focus," Comair directs, "is on state level governmental concerns that are common to all of the citizens of this state, even though those concerns may be addressed by smaller geographic entities . . . " *Id.* Comair recognized that an entity's immunity status depends to some extent on the immunity status of the parent entity. *Id.*

This case does not fall into a gray area as Louisville Metro is "a classification of county government and thus an arm of the Commonwealth" and "this case does not involve a separate entity whose connection to state government can be debated." *Louisville/Jefferson County Metro Gov't v. Cowan*, 508 S.W.3d 107 (Ky. Ap. 2016); *see also See* Ky. Rev. Stat. § 67C.101(2)(e); *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003) (Under Kentucky law, county governments are protected by sovereign immunity); *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't,* 270 S.W.3d 904, 907 (Ky. App. 2008)("A county 'is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity.' . . . Therefore, absent an explicit statutory waiver, Louisville Metro is entitled to sovereign immunity.")

The Kentucky Court of Appeals' decision in *Cowan* is instructive. There, the plaintiff sued Louisville Metro for negligence for injuries sustained on the pool deck at the Mary T. Meagher Aquatic Center. *Id.* at 108. The issue was "whether the Aquatic Center qualifies for immunity." *Id.* at 109. The Court held that Louisville Metro is a classification of county government, and thus an arm of the Commonwealth entitled to sovereign immunity. *Id.* The Court held it need not

analyze *Comair* as to whether the Aquatic Center qualifies for immunity because unlike the Transit Authority in *Bebelhauser*[3] and the Airport Board in *Comair*, "this case does not involve a separate entity whose connection to state government can be debate; this case involves the metro government itself as the allegedly negligent party." *Id.*

As in *Cowan,* this case does not involve a separate entity. Louisville Metro is the Defendant, unlike TARC in *Bibelhauser*, 432 S.W.3d 171, and the Airport Board in *Comair,* 295 S.W.3d 91. Louisville Metro is a classification of county government that qualifies for sovereign immunity, and as result is "political subdivision" under the Whistleblower Act per the analysis set forth in *Wilson*. Thus, Butrum can bring a Whistleblower claim against Louisville Metro and she satisfies the first and second elements of her claim.

Louisville Metro next argues that Butrum fails to adequately plead the the third and fourth elements, but even if she has adequately pled a claim, her claim fails because she has "presented no evidence that she 1) disclosed a violation of law of a public agency, or 2) was subject to any reprisal whatsoever for having done so." [DE 61-1 at 1465]. Louisville Metro does not develop this argument.

Butrum has alleged, and there is sufficient evidence for purposes of this motion, that Butrum "made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority." [DE 1-4, DE 1-6]. Kentucky's Whistleblower Act protects state employees who report, divulge, or disclose any violation of the

---

[3] The Kentucky Court of Appeals fount that the Transit Authority of River City ("TARC") was not entitled to sovereign immunity status in *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky. App. 2013).

law, or any facts or information relative to mismanagement, waste, fraud, or abuse of authority. *Pennyrile Allied Cmty. Servs., Inc. v. Rogers,* 459 S.W.3d 339, 344 (Ky. 2015), as modified (Mar. 3, 2015). Under Kentucky law, the disclosure can be made to the employee's own agency, *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008), or to anyone who may have authority to remedy or report perceived misconduct. *Harper v. Univ. of Louisville,* 559 S.W.3d 796, 802–03 (Ky. 2018).

Butrum alleges to have made a report to: Walczak [DE 1, Compl. ¶¶ 5, 33], the Maintenance Facilities Manager Sean Woods ("Woods") on several separate occasions [DE 1, Compl. ¶¶ 11, 12, 14, 31], and the Zoo's Assistant Director of Operations Stephanie Moore ("Moore"), [DE 1, Compl. ¶ 17, 31]. Butrum also alleges to have made a report to Human Resources Downtown. [DE 1, Compl. ¶ 26]. The results of that investigation are attached to Butrum's complaint. [DE 1-4, 1-6]. Butrum also filed a complaint with the EEOC. [DE 1, Compl. ¶ 29]. Butrum verified her complaint. [DE 1 at 26]. 28 U.S.C.A. § 1746 permits a document signed and dated under penalty of perjury to be used instead of a sworn declaration or affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("[A] verified complaint . . . carries the same weight as would an affidavit for the purposes of summary judgment.")(citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). Butrum has met the third element for purposes of a motion for judgment on the pleadings and summary judgment.

As for the fourth element, Butrum has sufficiently alleged that her employer acted to discourage her from making a disclosure or to punish her for making such a disclosure. Butrum asserts that after she made her reports to Woods and Moore, they engaged in behavior designed to discourage her [DE 1, Compl. ¶¶ 12-14, 17-19, 23], and further discouraged her after she made

her report to downtown Human Resources [DE 1, Compl. ¶¶ 27-28]. She also alleges Walczak engaged in behavior designed to discourage her after she filed her complaint with the EEOC. [DE 1, Compl. ¶¶ 30]. Thus, Butrum has sufficiently pled the fourth element of a whistleblower claim for purposes of motion for judgment on the pleadings.

In its Reply, Louisville Metro states Butrum "[h]as presented no evidence that she . . . was subject to any reprisal whatsoever . . . Butrum suffered no adverse employment action whatsoever . . . she cannot even state the manner of this alleged reprisal." Butrum's verified complaint and its attachments are the only evidence she presents the Court in opposition to Louisville Metro's Motion. The Court has concerns about whether Butrum can meet her burden on this claim. That said, Louisville Metro does not develop this argument in its briefing or present the Court with evidence from the record to rebut Butrum's verified complaint. Thus, the Court cannot grant Louisville Metro summary judgment on this claim given the lack of developed argument and support in its motion. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997); *see Singleton v. Astrue*, 2010 WL 6004448, at *3 (E.D. Ky. June 28, 2010) ("It is well-established that courts are not obligated to consider unsupported arguments inadequately developed in the briefs.") (quoting *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049 (Table) (6th Cir.1994) (internal quotation marks and formatting omitted). For these reasons, Louisville Metro's motion for summary judgment on the Whistleblower claim is denied at this time.

b.  Open Records

In Count 7, Butrum alleges that Louisville Metro violated "the Freedom of Information Act as codified under 5 U.S.C. Section 552."  The Freedom of Information Act only applies to federal agencies. 5 U.S.C. § 552(f).  Butrum does not dispute that Louisville Metro is not a federal agency, and thus her claim must fail.  Butrum declined to respond to this aspect of Louisville Metro's motion. [DE 73 at 2094].  "[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded."  *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008) (citing *Hodes v. U.S. Dep't of Housing & Urban Dev.*, 532 F. Supp. 2d 108, 117 (D.D.C. 2008)); *see also Ohio Start Transp. LLC v. Roadway Express, Inc.*, No. 2:09-cv-00261, 2010 WL 3666982, at *3 (S.D. Ohio, Sept. 14, 2010) (party who failed to respond to other party's argument "waiv[ed] its ability to challenge the argument and effectively conced[ed] the point"); *Crenshaw v. Portfolio Recovery Assocs., LLC*, 2020 WL 113358, at *3 n.4 (W.D. Ky. Jan. 9, 2020) (citations omitted) (recognizing that the Court has power to grant summary judgment for party where other party does not oppose it).  Thus, summary judgment is granted in favor of Louisville Metro on Butrum's Open Records claim.

c.  Intentional and Negligent Infliction of Emotional Distress Claims

Louisville Metro also moves to dismiss Butrum's NIED and IIED claims.  [DE 61-1, at 1467].  Under Kentucky law, when damages for emotional distress are available through a traditional state tort claim, and the conduct was not intended to cause extreme emotional distress, an emotional distress claim will not lie. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993). When the alleged conduct makes out a claim for another tort for which emotional distress damages are available, IIED is not a valid cause of action in Kentucky. *Grace v. Armstrong*

*Coal Co., Inc*., 2009 WL 366239 at *3–4 (W.D. Ky. Feb. 13, 1999) (dismissing IIED claim where claims for defamation and wrongful discharge provided for emotional distress damages). For example, "a plaintiff cannot maintain both a negligence claim and an [outrage] claim based on a single set of facts." *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012).

Louisville Metro argues that Butrum cannot bring claims for NIED and IIED alongside statutory employment discrimination claims, citing *Messick v. Toyota Motor Mfg., Kentucky, Inc*., 45 F. Supp. 2d 578, 582 (E.D. Ky. 1999). In *Messick*, the court dismissed plaintiff's IIED claims because the plaintiff could recover for her emotional distress claims under her Kentucky Civil Rights Act claims. Butrum alleges federal claims of Sexual Harassment (Count 1), Hostile Work Environment (Count 2), and Sex Discrimination (Count 3), in violation of Title VII of the Civil Rights Acts of 1964. [DE 1]. Title VII of the Civil Rights Act of 1964 allows for recovery of emotional distress damages. 42 U.S.C. § 1981a.

Butrum argues that she is permitted to pursue this claim because Walczak's alleged conduct in altering Dunn's report is conduct separate from the conduct that make up her employment claims. [DE 73 at 2094-99]. Louisville Metro did not address this argument in its Reply. [DE 76 at 2148]. The Court agrees with Butrum that the allegations relating to the changes to the report involve different facts from those that make up her employment claims. The allegations relating to the report are the same allegations on which her defamation claim is based, yet that claim fails as a matter of law for the reasons below. Thus, Louisville Metro's motion for judgment on the pleadings on the IIED and NIED claims is denied. Louisville Metro did not otherwise move for summary judgment on these claims.

d. <u>Defamation</u>

Butrum alleges defamation against Louisville Metro.  The requisite elements of a defamation claim under Kentucky law are (1) a false and defamatory statement about another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Toler v. Sud-Chemie, Inc.,* 458 S.W.3d 276, 281–82 (Ky. 2014), as corrected (Apr. 7, 2015).  It is not entirely clear which statements Butrum alleges were false, but it appears from her complaint that she alleges certain changes made to the final version of Dunn's report were defamatory.  An earlier draft of Dunn's report dated February 3, 2017, stated:

> I. Ms. Butrum alleges that she was sexually harassed by her manager at the time, Richard W. Williams, Zoo Facilities Manager, after she was hired in October 2014.
>
> a. The finding are that Mr. Williams resigned his position with the Louisville Zoo subsequent to being informed of Ms. Butrum's allegation.
>
> II. Ms. Butrum alleges that management level personnel at the Zoo were aware of Mr. Williams' behavior and did nothing to correct him or protect her.
>
> a. Unsubstantiated.

[DE 1-4](emphasis added).  Butrum objects to the changes made to the final version, dated March 13, 2017, which she alleges contain false statements:

> I. Ms. Butrum alleges that she was sexually harassed by her manager at the time, Richard W. Williams, Zoo Facilities Manager, after she was hired in October 2014.
>
> a. **The recording that was provided indicates that Ms. Butrum spoke to Mr. Williams regarding her allegations that he engaged in inappropriate sexual behavior and that the behavior was not wanted. However, the recording does not definitely establish exactly what did or did not take place between Ms. Butrum and Mr. Williams**.  **The**

**investigation established that as soon as Director Walczak was notified by Ms. Butrum of her allegations against Mr. Williams, the Director took immediate action**

II. The findings are that Mr. Williams resigned his position with the Louisville Zoo subsequent to being informed of Ms. Butrum's allegation. Ms. Butrum alleges that management level personnel at the Zoo were aware of Mr. Williams' behavior and did nothing to correct him or protect her.

a. Unsubstantiated.

[DE 1-6](emphasis added). Butrum alleges that the findings were "false revisions" and "were created by Kate Dunn for John Walczak, in response to his request, adding nuances he had, also, requested." [DE 1, Compl. ¶ 38 at 18-19]. Butrum alleges these findings made it seem "[Butrum] had, most probably, been the sexual aggressor in the Williams situation, implying he was the victim, and strongly implying [Butrum] had some role in Williams' actions." [DE 1, Compl. ¶ 38 at 19].

Louisville Metro presents two arguments for why Butrum's cannot satisfy the second element, "an unprivileged publication to a third party." First, Louisville Metro argues that the allegedly defamatory statements were never published to a third party because they were "exclusively between Metro employees for the purpose of investigating Ms. Butrum's EEOC claim. There was no publication to a third party, so there was no defamation." [DE 76 at 2149]. This argument fails because the Kentucky Supreme Court has noted that "Kentucky has seemingly rejected" the concept of "intercorporate nonpublication," which "operates on the basis that '[a]gents and employees of [the same principal] are not third persons in their relations to the corporations, within the meaning of the laws pertaining to the publication of libels.'" *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014), as corrected (Apr. 7, 2015), citing *Prins v.*

*Holland– N. America Mortgage Co.*, 107 Wash. 206, 181 P. 680, 680 (1919), *Dossett v. New York Min. & Mfg. Co.,* 451 S.W.2d 843, 845–46 (Ky.1970), *Biber v. Duplicator Sales & Serv., Inc.,* 155 S.W.3d 732, 736–37 (Ky.App.2004), *Stewart v. Pantry, Inc.,* 715 F.Supp. 1361, 1367–68 (W.D. Ky. 1988). This argument thus fails.

Second, Louisville Metro contends that Butrum's defamation claim fails because the statements are subject to qualified privilege under *Toler,* 458 S.W.3d at 282, and KRS 411.060, and thus cannot constitute defamation. [DE 61-1 at 1468]. Kentucky recognizes a qualified privilege "for or individuals communicating 'where the communication is one in which the party has an interest and it is made to another having a corresponding interest.'" *Id.* This privilege has been applied in the employment context. *Id.,* citing *Dossett,* 451 S.W.2d at 845. Certain documents of Louisville Metro are also privileged "unless it is proved that the publication was maliciously made." KRS 411.060.

The protection of qualified privilege "can be lost through unreasonable actions amounting to abuse . . . if both actual malice and falsity are affirmatory shown." *Toler*, 458 S.W.3d at 283. "Abuse of the qualified privilege may be shown in a several ways, some indicating ill will or maliciousness more directly than others." *Id.* Abuse may include

> (1) 'the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter'; (2) the 'publication of the defamatory matter for some improper purpose'; (3) 'excessive publication'; or (4) 'the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.'

*Id.* Plaintiff Butrum has the burden of showing this abuse by "showing that either there was no privilege under the circumstances or that it has been abused." *Id.* at 284. In the context of a Kentucky defamation claim, "'[i]f the plaintiff fails to adduce such evidence sufficient to create a

genuine issue of fact, qualified privilege remains purely a question of law under the summary judgment standard' [and] . . .[t]o defeat a summary judgment . . . motion, a party must, in essence, present the same amount of proof required if there was no privilege." *Id.* at 284–85.

Butrum makes two arguments in response. First, she argues that the statements were outside the scope of the privilege and thus not entitled to the privilege in the first place. [DE 73 at 2098]. She argues that Walczak's "intervention in the downtown HR's investigation" of Butrum's claims was outside the scope of the privilege because Walczak "was not [Butrum's] immediate supervisor, he was Director of the Zoo . . ." [DE 73 at 2098]. Butrum cites no authority in support of her argument that the privilege would only attach to a communication by her direct supervisor, and not someone higher on the chain of command. Such an argument makes no sense given Kentucky law applying the qualified privilege in the employment context. *Dossett,* 451 S.W.2d 843, *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky. App. 2011). She alleges in her verified complaint that she notified Walczak about her then supervisor's alleged sexual harassment. [DE 1, Compl. ¶ 5]. Walczak had an interest in the statement.

Second, Butrum argues the statements were made for an improper purpose — Walczak "intervened to clear himself, the Zoo . . . of a public finding that [Butrum] had been sexually harassed." [DE 73 at 2098]. As explained in *Toler*, Butrum has the burden of putting forth evidence sufficient to create a genuine issue of fact about whether the statements were made with actual malice and falsity. *Toler*, 458 S.W.3d at 284. Actual malice, in this context, "refers to 'malice in fact'—read: malevolence or ill will." *Id*. at 283. Although Louisville Metro correctly identifies that it may be entitled to qualified immunity, it does not address malice or otherwise respond to Butrum's claim that the statements were an abuse of the privilege, made for an improper

purpose. [DE 76, Reply at 2149-50]. That said, under Kentucky law, once the privilege is placed in issue, it "falls upon plaintiff to defeat this defense by a showing that either there was no privilege under the circumstances or that it had been abused." *Harstad*, 338 S.W.3d at 811 (Ky. App. 2011). If the plaintiff fails to adduce such evidence sufficient to create a genuine issue of fact, qualified privilege remains purely a question of law under the summary judgment standard. *Id.*, citing *Cargill v. Greater Salem Baptist Church*, 215 S.W.3d 63, 68 (Ky. App. 2006) ("Although the jury normally determines whether a privilege was abused, a motion for summary judgment is appropriate when the record shows no facts which would lead to the conclusion that the Appellees acted with malice.").

Butrum fails to provide evidence of actual malice to overcome summary judgment. Even considering the allegations of her verified complaint and the attached versions of the report, as well as the transcript of the recording [DE 21-1], she has failed  present evidence sufficient for a reasonable fact finder to determine that Walczak or Dunn made false statements about Butrum with actual malice. The Court has reviewed the changes to the report, detailed above, and the recorded conversation found in the record at [DE 21-1]. There is not enough information for a reasonable fact finder to determine that the statements added to the report about the recording were false or malicious. Thus, summary judgment is granted in favor of Louisville Metro on Butrum's defamation claim.

    e. Punitive Damages

Butrum claims she is entitled to punitive damages. [DE 1-2, Compl. at 25]. Punitive damages are not an available remedy against municipalities unless authorized by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 248 (1981); *Phelps v. Louisville Water Co.*, 103

S.W.3d 46, 58 (Ky. 2003). Kentucky's whistleblower statute expressly permits punitive damages as a form of recovery. KRS 61.990(4). Thus, Butrum may seek punitive damages for that claim at trial. That said, she may not seek punitive damages on her other claims. For that reason, any claim for punitive damages against Louisville Metro is dismissed apart from Butrum's whistleblower claim.

### f. Title VII Claims and ADA Retaliation Claim as they Relate Rich Williams

Louisville Metro argues that part of Butrum's claims of Sexual Harassment (Count 1), Hostile Work Environment (Count 2), Sex Discrimination (Count 3), and Retaliation (Count 4), are barred by the statute of limitations to the extent that they stem from the allegations about Rich Williams in paragraphs five and six of the verified complaint. [DE 61-1 at 1471-74]. In paragraphs five and six of her verified complaint, Butrum alleges sexual harassment by Williams. She alleges that in December 2014, she recorded his comments, confronted him with the recording, and he was permitted to resign within days of the confrontation. [DE 1, Compl., ¶¶ 5-6]. Butrum's complaint then takes a different turn, detailing alleged incidents of gender discrimination, hostile work environment, and retaliation that occurred after Williams was gone, involving separate actors. The issue is whether Williams' alleged acts, which fall outside the statutory period for filing charges set forth in 42 U.S.C. 2000e-5(e), are actionable under Butrum's Sexual Harassment, Hostile Work Environment, Sex Discrimination, and Retaliation claims.

Under Title 42 U.S.C. § 2000e–5(e)(1), a plaintiff must file a charge within the statutory time and serve notice upon the person against whom the charge is made. In a state like Kentucky where state laws prohibit discriminatory practices, an employee who first files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice. *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). In all other states, the charge must be filed within 180 days. *Id*. The statute of limitations bars any claim not filed within the statutory period. *Id*.

The United States Supreme Court has held that "a discrete act" is actionable only if it offered within the statutory filing period:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan*, 536 U.S. at 113. In contrast, the United States Supreme Court held that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct . . . over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. Thus, "it does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*.

Butrum had 300 days to file her complaint with the EEOC for any discriminatory occurrence alleged. Williams' alleged conduct is a discrete discriminatory act. According to her verified complaint, Williams' conduct ended no later than January 31, 2015 [DE 1, Compl. ¶¶ 5-

6], and an EEOC claim was thus due by November 27, 2015. Butrum's EEOC complaint was filed on September 28, 2016. [DE 1, Compl. ¶ 29]. Williams' alleged acts were not asserted during the statutory period and are barred by the statute of limitations. Thus this conduct is not actionable under Butrum's Sexual Harassment, Discrimination, and Retaliation claims. Even so, Williams' conduct is actionable under Butrum's Hostile Work Environment claim even though it falls outside the statutory period because it contributes to the claim. As a result, Louisville Metro's motion for summary judgment on Williams' alleged conduct as it relates to Counts 1-4 is granted in part and denied in part.

## B.  CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Louisville Metro's Motion for Partial Summary Judgment [DE 61] is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that Louisville Metro's motion for trial date scheduling conference [DE 99] is **GRANTED** and the parties shall contact Magistrate Judge Lindsay's Case Manager, Theresa Burch, by email at theresa_burch@kywd.uscourts.gov by **March 20, 2020** for purposes of scheduling a conference to set a trial date.

Rebecca Grady Jennings, District Judge
United States District Court

March 12, 2020

22