**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:17-CV-330-RGJ-CHL**

RACHEAL ELIZABETH ANNE BUTRUM,                                    **Plaintiff,**

**v.**

**LOUISVILLE METROPOLITAN GOVERNMENT,**                          **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Renewed Motion for Sanctions filed by Defendant, Louisville/Jefferson County Metro Government ("Louisville Metro"). (DN 65.) Plaintiff, Racheal Elizabeth Anne Butrum ("Butrum"), filed an initial response (DN 67), and Louisville Metro filed a reply (DN 75). The Court held an evidentiary hearing on Louisville Metro's motion on February 5, 2019. (DNs 89, 90.) Thereafter, the Parties submitted post-hearing briefs. (DNs 93, 95.) Because Louisville Metro's motion was administratively remanded for a significant period of time to allow the Parties to participate in a settlement conference, the Court allowed the Parties to file supplemental briefs. (DNs 108, 109, 110.) Butrum also filed a response (DN 113) to Louisville Metro's supplemental brief (DN 110). Therefore, this matter is ripe for review.

For the reasons set forth below, Louisville Metro's Renewed Motion for Sanctions (DN 65) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

## I.    BACKGROUND

In the instant action, Butrum alleged, among other causes of action, that she was sexually harassed, treated differently than male employees, subjected to a hostile work environment, and retaliated against during her employment at the Louisville Zoo (the "Zoo"), which is an agency of

Louisville Metro.[1]  (DNs 1, 114.)  Butrum was employed by the Zoo from October 2014 until she

resigned on June 22, 2017.  (DN 90, at PageID # 2208.)  Separate from the merits of her claims,

this litigation has also largely been focused on whether Butrum improperly gained access to

Louisville Metro's attorney-client privileged communications through a human "mole" at the Zoo.

Because Louisville Metro's instant motion is based in part on Butrum's testimony at an evidentiary

hearing on a previous motion for sanctions, the Court will first recount the background associated

with that motion and evidentiary hearing.

### A. Louisville Metro's First Motion For Sanctions (DN 31) and the Court's March 6, 2018, Evidentiary Hearing

On January 3, 2018, Louisville Metro filed its first motion seeking sanctions based on its

belief that Butrum was accessing its attorney-client privileged communications and work product.

(DN 31.)  Specifically, Butrum served a request for production of documents on Louisville Metro

that stated:

> Please provide the search results, requested by Colleen O. Davis, in an email, dated
> on or about July 23, 2017, to Sean Woods, John Walczak, and Stephanie Moore, to
> search the Plaintiff's Zoo emails, using the key search terms, including, but not
> necessarily limited to: sex, gender, discrimination, angry, aggressive, passive, crew,
> nailer, woman, chair, insubordination, fear, safety, refuse, toxic, hostile, carousel,
> tai bar, train, grievance, HR, railroad, Brian, Stear, Donnie, Laster, Joe, Culver,
> gossip, rumor, investigation, EEOC, Leah, Murphy, solar panel, Andria Webster,
> mistake, mannequin, harass, women, culture, sex, Maria Cotter, redacted business
> records.

(DN 19, at PageID # 1041-42; DN 31-1.)  Louisville Metro contended that the request for

production mirrored the terms of an attorney-client privileged e-mail communication between

counsel of record in this case, Colleen O. Davis, and the Zoo's Director, John Walczak

---

[1] While Butrum brought a number of causes of action related to her employment, the Court recently granted summary judgment to Louisville Metro on several claims and theories presented in Butrum's Complaint.  (DN 114.) Butrum's Title VII, Whistleblower Act, intentional infliction of emotional distress, and negligent infliction of emotional distress claims remain pending before the Court.  (*Id.*)

("Walczak"); Assistant Director, Stephanie Moore ("Moore"); and Facilities Manager, Sean Woods ("Woods"). (DN 31, at PageID # 1141-42.) Butrum also served a request for production for the minutes of a specific conference between Walczak, Moore, Woods, and an Assistant Jefferson County Attorney, Dan Landrum ("Landrum"). (DN 19, at PageID # 1042 ("Please provide the minutes, from the phone conference, in Stephany Moore's office, the second week of June, regarding personnel issues, with Walczak, Woods, Moore, and Dan Landrum, participating."); DN 31-1 (same).) Louisville Metro contended that the calendar entry for the meeting was marked "private," such that only attendees or their personal assistants could see the same. (DN 31, at PageID # 1142.) Butrum also requested "John Walczak's F drive files under the heading R Butrum." (DN 19, at PageID # 1039; DN 31-1.) Louisville Metro indicated that Director Walczak's computer was not publicly available such that neither Butrum nor her attorney should know of the "existence of files and subfolders contained therein absent a breach." (DN 31, at PageID # 1142.) The Court initially denied Louisville Metro's motion because it was filed without first seeking a telephonic conference with the Court as required by the Court's Scheduling Order (DN 16) but set a telephonic conference to discuss the discovery dispute underlying the Zoo's Motion. (DN 34.) After the telephonic conference, the Court set an evidentiary hearing to take testimony on the issues underlying the dispute. (DN 37.)

At the March 6, 2018, evidentiary hearing, the Court examined Butrum under oath about her alleged receipt of privileged communications from a mole then identified as "John Doe." (DN 39.) Butrum testified that John Doe called her to tell her about that the e-mail, the meeting, and F-drive material discussed in Louisville Metro's motion and that she had neither asked John Doe to obtain this information nor initiated, instigated, or prompted that call from John Doe by anything she did. (*Id.* at PageID # 1240.) She testified that as far as she knew, her counsel had likewise not

suggested, instigated, or prompted the call from John Doe to her.  (*Id.*)  Butrum then testified as follows in response to the Court's questions:

> Q. Did you – have you received any documents from John Doe?
> A. No.
> Q. All right. Have you ever – no documents ever during the course of this litigation up to today? No documents whatsoever from John Doe?
> A. No, sir.
> Q. Has John Doe offered you any documents?
> A. No, sir.
>
> . . .
>
> Q. Okay. So I'm not asking you to speak for this other person, but as far as you know it was John Doe's idea – that John Doe came across this information in some way and it was John Doe's idea to reach out to you?
> A. Absolutely.
> Q. Okay. And I asked you if you received any documents. To your knowledge, has John Doe provided any documents to [your counsel] even if they didn't come through you?
> A. No.
> Q. All right.
> A. No documents.

(*Id.* at 1240-41, 1248.)  Butrum testified that the request for the production regarding the search terms was based on her recollection of a phone call she received from John Doe when she was in the Smoky Mountains during which John Doe read her the terms verbatim, and Butrum later wrote them down on a piece of paper that she left in the hotel room.  (*Id.* at 1244-45, 1247-48, 1258-59.) Louisville Metro submitted a copy of the e-mail and the attachment listing the search terms under seal given their claim that the same was protected by attorney-client privilege.  (DN 38, Def.'s Sealed Ex. 3.)  Based on the Court's review of the e-mail and submitted search terms, the e-mail is between counsel of record and Zoo leadership and the search terms in Butrum's document request nearly identically overlap in both form and order with the search terms attached to the e-

mail, though Butrum's request contains only approximately half of the search terms provided by Louisville Metro's counsel.  (*Id.*)

At the conclusion of the hearing, Louisville Metro requested that the Court (1) sanction Butrum and her counsel by dismissing the action; (2) award it attorneys' fees for bringing the motion; (3) order Butrum to reveal the name of John Doe and any other John Doe providing information to Butrum; (4) prohibit Butrum from having contact with any Louisville Zoo employees during the pendency of this lawsuit, and for Butrum to report to the Court and counsel for Defendants when she had contact with a Zoo employee; and (5) direct Butrum to provide an enumerated list of communications that she received from John Doe regarding the defense of the lawsuit.[2]  (DN 42, at PageID # 1315.)  After reviewing the transcript, the Court issued an order indicating that it was not convinced Butrum or her counsel had done anything sanctionable and that any misconduct appeared to have been committed by a third party.  (*Id.* at 1316.)  Given the importance of ensuring that Louisville Metro could securely communicate with its client to defend the instant lawsuit, the Court prohibited Butrum from communicating with any Zoo employee during the pendency of this lawsuit about the substance of this lawsuit.  (*Id.* at 1317-18.)  The Court further barred Butrum from communicating with John Doe about the lawsuit at all.  (*Id.*)  The Court also directed Butrum to provide an enumerated list of communications that she received from John Doe regarding the defense of the lawsuit in response to a discovery request to be propounded by Defendants.  (*Id.*)  The Court then declined to award Louisville Metro its attorney's fees in bringing the motion.  (*Id.*)

---

[2] At the time of the March 6, 2018, evidentiary hearing, the Louisville Zoo Foundation, Incorporated (the "Zoo Foundation") was also a Defendant in this lawsuit.  The Court subsequently dismissed Butrum's claims against the Zoo Foundation.  (DN 100.)

### B. Post-Hearing Discovery and Butrum's Deposition

Thereafter, on May 16, 2018, Louisville Metro served discovery requests on Butrum requesting that she identify the individual referred to as "John Doe," provide an enumerated list of communications she received from "John Doe" regarding Defendants' defense of this lawsuit, and that she "provide copies of all email correspondence, screenshots of phone calls, and any other documentation reflecting the communications identified in" her enumerated list. (DN 65-63.) Butrum's July 12, 2018, discovery responses identified the mole as Nancy Davidson ("Davidson"), a now-former assistant to Director Walczak and employee in the Zoo's IT Department. (*Id.* at PageID # 1541; DN 90, at PageID # 2295-96, 2298.) Butrum's list of her communications with Davidson stated that Davidson provided Butrum a screenshot of a February 2017 e-mail between Walczak and Kate Dunn ("Dunn") in Louisville Metro's Human Resources ("HR") Department. (DN 65-3, at PageID # 1545.) The discovery responses were electronically signed by Butrum as "true and correct to the best of [her] recollection." (*Id.* at 1552.) Though the discovery responses indicated that documents were attached, Louisville Metro was not provided with documents, including any text messages between Butrum and Davidson until the morning of Butrum's deposition. (DN 64, at PageID # 1485; DN 90, at PageID # 2227.) The text messages initially provided also appeared to have been selectively chosen and missing bits and pieces because several conversations appeared to begin with non-sequiturs, which Butrum's counsel later advised was because Butrum had omitted purely personal communications between herself and Davidson. (DN 64, at PageID #1484, 1493.)

During her August 8, 2018, deposition, Butrum testified that she contacted Nancy Davidson immediately after the March 6, 2018, hearing to tell Davidson that she had given

Davidson's name to the Judge and to tell Davidson that she could not discuss the lawsuit with Davidson anymore.  (DN 65-7, at PageID # 1575.)  Butrum also testified as follows:

> Q:    Did you ask Nancy to obtain information from John Walczak's computer –
> A:    No, I did not.
> Q:    -- about you?
> A:    No.
> Q:    Did she provide you with any documents?
> A:    The screenshots that you have there.
>
> . . .
>
> Q:    Okay. [I]t's your position that you did not ask Nancy to provide you anything off of your own computer or off of John's?
> A.    That's true.
> Q.    Anything she provided to you was unsolicited by you?
> A.    Correct.

(DN 98, Def.'s Ex. 1-11, at 160; DN 110, at PageID # 2460.)[3]

### C.    Butrum's Open Records Requests

In the summer and fall of 2018, after the Court's March 6, 2018, hearing, Butrum sent three very specific open records requests to the Louisville Zoo.[4]  On July 23, 2018, Butrum sent an open records request to the Zoo requesting an April 24, 2017, e-mail between Zoo leadership, HR, and Landrum.  (DN 65-6, at PageID # 1570-71.)  When asked to provide keywords to be searched for, Butrum provided the following description:

> Wednesday 4/24/2017 (10:53 AM) Personnel Issue, meeting request.  Kendall/Dan We have had two instances over the past week involving  Racheal Butrum that we need to discuss how to proceed with. Please let  me know if this time will not works [*sic*] that we can reschedule. Thanks,  Stephanie Moore

---

[3] Though Louisville Metro did not attach this deposition testimony to its original motion, it was introduced as an exhibit during the February 5, 2019, evidentiary hearing to be discussed below and included in Louisville Metro's supplemental brief (DN 110).

[4] While Louisville Metro represented in its Renewed Motion for Sanctions that Butrum and her husband had made nearly forty open records requests as of September 10, 2018, Louisville Metro relied on only three of those requests in its motion.  (DN 65, at PageID # 1522.)

(*Id.* at 1571.)  In response, the Louisville Metro Government Office of Records Compliance indicated that Zoo advised that the requested e-mail was exempt from disclosure because it was "attorney-client privileged information."  (*Id.* at 1570.)

On August 9, 2018, the day after her deposition, Butrum sent an open records request to the Louisville Zoo requesting an e-mail Director Walczak forwarded to Assistant Director Moore in November 2016.  (*Id.* at 1571-72.)  Butrum provided the following description of the records to be searched for:

> Please feel free to contact me if you have any legal questions, managing employees who have brought complaints is difficult at best and sometimes what the law finds retaliatory seems counter-intuitive. Case in point: one may feel that withdrawing from someone who has accused you of actionable behavior is the prudent thing to do. Not so. Courts have held such that such behavior could be held as shunning and therefore retaliatory behavior. Thank goodness for training. ( JW forwarded that to SM with a FYI and confidential note)........... I would like a copy please.

(*Id.* at 1572.)  Butrum was again advised by Louisville Metro that Zoo considered the requested e-mail was exempt from disclosure because it was "attorney-client privileged information."  (*Id.* at 1571.)

Finally, on September 9, 2018, Butrum sent an additional open records request for a PDF attached to a December 8, 2016, e-mail from Walczak to a Louisville Metro HR investigator to which Butrum attached a photograph of the e-mail itself.  (*Id.* at 1572-73; DN 65, at PageID # 1523, 1527.)  Louisville Metro represented that the photograph had never been previously produced to Louisville Metro and had not been previously produced by Louisville Metro in response to any previous open records request.  (DN 65, at PageID # 1527.)

### D.    Louisville Metro's Instant Motion (DN 65)

In September 2018, Louisville Metro notified the Court that it wished to file a renewed motion for sanctions based on the information it had obtained since the March 6, 2018, hearing

and requested that the Court set the matter for a status conference consistent with the requirements of its Scheduling Order (DN 16). (DN 58.) During the status conference, at which Butrum was present, her counsel represented to the Court that she had turned over every document that she possessed. (DN 64, at PageID # 1492.) Because it was clear that there was no way for the Parties to compromise and avoid further motion practice, the Court granted Louisville Metro leave to file the instant motion and set an evidentiary hearing on the same. (DNs 63, 64.)

In its renewed motion, Louisville Metro alleged that Butrum lied to the Court during her March 6, 2018, testimony when she said she never asked the mole—by then identified as Davidson—to look for documents and never received any documents. (DN 65, at PageID # 1516-17.) Louisville Metro argued that Butrum testified at her deposition and stated in her discovery responses that she received screenshots of documents from Davidson. (*Id.* at 1518-20.) Louisville Metro also argued that open records requests it continued to receive after the March 6, 2018, hearing made it question whether Butrum had actually complied with the Court's Order to disclose the extent of her communications with Davidson or produced all items she did receive in response to Louisville Metro's discovery requests given that the same quoted directly from e-mails not previously produced by Butrum. (*Id.* at 1522-28.) Further, Louisville Metro argued that Butrum violated the Court's order from the bench after the March 6, 2018, evidentiary hearing because she testified in her deposition that she called Davidson immediately after the evidentiary hearing. (*Id.* at 1518, 1528-29.) Louisville Metro requested sanctions pursuant to the Court's inherent authority because it argued Butrum had abused the judicial process triggering a need to deter Butrum from further dishonest litigation practices and to make Louisville Metro whole for the costs it incurred in trying to get to the bottom of whether Butrum made a full disclosure and/or whether Butrum was still receiving attorney-client privileged materials. (*Id.* at 1515, 1531-32.) Louisville Metro

requested that the Court impose five different sanctions pursuant to its inherent authority, including (1) awarding Louisville Metro its "costs associated with evaluating the extent of privileged communications Ms. Butrum has received, including attorney's fees"; (2) awarding Louisville Metro its "costs associated with responding to Open Records Requests evidencing Ms. Butrum's receipt of privileged information, including attorney's fees"; (3) requiring Butrum to produce all communications between herself and Nancy Davidson, regardless of the personal nature of the same; (4) excluding all information Butrum had obtained through Nancy Davidson from trial of this matter; and (5) prohibiting Davidson from testifying at trial of this matter. (*Id.* at 1515, 1532.)

In her initial response to the Motion, Butrum argued that her testimony was not false because "Davidson sent the Plaintiff a screen shot; Davidson did not put a document in her hand." (*Id.* at PageID # 1591.) Butrum emphasized in her response that

> The Plaintiff never received documents from Nancy Davidson, EVER. Davidson never offered her documents, and the Plaintiff never asked for or solicited information or documents from Davidson. The Plaintiff she did not initiate a call to Davidson that resulted in Davidson sharing information with her. No attorney client information was improperly shared.

(*Id.* at 1590.) Butrum even set off the above-quoted text in both bold and underlined type. (*Id.*) Butrum also noted that she contacted Davidson after the hearing but prior to the issuance of the Court's written order (DN 42).

### E.  February 5, 2019, Evidentiary Hearing

Though the Court originally scheduled the evidentiary hearing on Louisville Metro's Renewed Motion for Sanctions (DN 65) for November 28, 2018, the hearing did not take place until February 5, 2019, due to an abrupt change in Butrum's counsel. (DNs 63, 78, 79, 83, 87, 89, 90.) At the hearing, Butrum admitted that she called Davidson immediately after the March 6, 2018, hearing but stated that she did so because she believed she would receive more information

from Davidson if she did not alert Davidson she was not permitted to communicate about the lawsuit anymore. (DN 90, at PageID # 2225.) She stated that she was being "proactive" and trying to do as the Court had instructed her to do. (*Id.* at 2226.)

Butrum testified that she and Davidson began sharing information in August 2016 and did so until shortly before the March 6, 2018, hearing in this case. (*Id.* at PageID # 2211-12.) She testified that she and Davidson saved themselves under different names in each other's phones to avoid detection—she was Rodney and Davidson was David. (*Id.* at 2213-14.) She said that she communicated with Davidson through text messages and phone calls. (*Id.* at 2214-15.) However, she testified that she deleted all texts messages between her and Davidson as they came in until after she resigned from the Zoo to protect Davidson. (*Id.* at 2241, 2245-46.) Louisville Metro introduced several texts messages between Davidson and Butrum as exhibits during the evidentiary hearing. (DN 98, Def.'s Ex. 1-12; DN 98, Def.'s Ex. 2; DN 98, Def.'s Ex. 3.)[5] For example, on June 22, 2017, Butrum and Davidson exchanged the following text messages:

| Davidson: | If you need any emails etc. GET THEM RIGHT NOW. I've been instructed to disable your account. |
| Butrum: | [text cut off and illegible] I have the other stuff |
| Davidson: | The resignation? |
| Butrum: | And the email. |
| Davidson: | Yeah I'll print it out. |
| Butrum: | Thanks. |

---

[5] Louisville Metro's first exhibit during the evidentiary hearing was a spiralbound copy of the fourteen exhibits it had prepared for the previously scheduled November 28, 2018, hearing. The Court will refer to each exhibit therein as Def.'s Ex.1-1, with the second number corresponding to the tab of the spiralbound document. Louisville Metro also submitted as Exhibit 2 the selection of texts messages it received the morning of Butrum's deposition and submitted as Exhibit 3 the supplemental production it received from Butrum's new counsel in the weeks before the February 5, 2019, hearing. (DN 98, Def.'s Exs. 2-3; DN 90, at PageID # 2249-50.)

(DN 98, Def.'s Ex. 1-12, at 2-3; DN 98, Def.'s Ex. 2, at 2-3; DN 98, Def.'s Ex. 3, at 310-11.)

Butrum admitted during the evidentiary hearing that in these text messages she did solicit

documentation and information from Davidson. (DN 90, at PageID # 2251-52.)

On July 13, 2017, Butrum and Davidson exchanged the following text messages:

| | |
|---|---|
| Butrum: | Keep your eye out for this…."Letter to Brian" im curious?! |
| Davidson: | Yeah I didn't know what they were talking about. |

(DN 98, Def.'s Ex. 1-12, at 12; DN 98, Def.'s Ex. 2, at 12; DN 98, Def.'s Ex. 3, at 320.) During

the evidentiary hearing, Butrum admitted that she did ask Davidson for information about the letter

but said she didn't ask Davidson for a copy of it, stating, "I asked her just basically what the letter

was about." (DN 90, at PageID # 2257.) She testified that the letter didn't end up have anything

to do with the instant litigation but admitted that Brian Stear is a potential witness in this case.

(*Id.*)

On August 28, 2017, Butrum and Davidson exchanged the following text messages:

| | |
|---|---|
| Butrum: | What's your ETA on being able to help with discovery. |
| Davidson: | When is your deadline? Let me see how fast I can move in this accreditation today. |
| Butrum: | Thursday |
| Davidson: | Accreditation is to be submitted by Wednesday so that is feasible. I'm working like crazy to get it complete today if at all possible. |
| Butrum: | Ok…. |
| Butrum: | Do you remember the date RW signed his letter of resignation. It was a few days after he quit right? |
| Davidson: | You OK? I work well under pressure by the way and I'm off Thursday so we're good!!! |
| Butrum: | Im [*sic*] good. |
| Davidson: | I think it was the next day or the day after that at the latest but I'll check before we talk about it again. |
| Butrum: | Ok. Perfect! |

(DN 98, Def.'s Ex. 1-12, at 30-33; DN 96, Def.'s Ex. 2, at 30-33; DN 98, Def.'s Ex. 3, at 338-41.)

Butrum testified that she didn't ask Davidson for help, that Davidson volunteered to help her

organize her discovery materials.  (DN 90, at PageID # 2261-62.)  She testified that her question on this date was simply following up on Davidson's previous offer of assistance.  (*Id.* at 2262.) She testified that the "RW" referred to in this series of text messages was Rich Williams, a former coworker of hers at the Zoo against whom she levied allegations of misconduct in her Complaint. (*Id.* at 2263; DN 1, at PageID # 3.)

Regarding her previous March 6, 2018, testimony, she reaffirmed her previous testimony that she received no documents from Davidson:

> Q:  Do recall Judge Lindsay asking you if you received any documents from John Doe who we now know as Nancy Davidson?
>
> A.  Yes.
>
> Q.  Okay. And you replied "No"?
>
> A.  I had received no documents.
>
> Q.  And Judge Lindsay asked you again, "Have you ever received any documents during the course of this litigation up until today, any documents whatsoever from John Doe?" And you again said, "No."
>
> A.  Still the answer is no.
>
> Q.  And Judge Lindsay asked you, "Has John Doe offered you any documents?" And you said, "No."
>
> A.  I said no.
>
> Q.  All right. And that's still your testimony today?
>
> A.  Well, at that time they were in text messages and until the judge ordered me to print them into documents, they were text messages.
>
> Q.  So it's your testimony before this Court today that because she did not hand you a piece of paper, you did not have any documents from Ms. Davidson?
>
> A:  Correct.

(DN 90, at PageID # 2216-17.)  When asked by Louisville Metro's counsel whether it was her testimony that "because Nancy Davidson never gave [her] any piece of paper, [she] didn't receive a document," Butrum responded, "Yes. They became documents after I printed them when I was ordered to do so."  (*Id.* at 2218.)  She later stated that her understanding of a document was "a tangible piece of paper."  (*Id.* at 2220.)

Butrum's definition of a document notwithstanding, she affirmed that she received the following materials from Davidson via text message: (1) a screenshot of a March 13, 2017 e-mail between Director Walczak and Dunn in HR on which Landrum was copied; and (2) an April 24, 2017, combination e-mail and calendar entry from Assistant Director Moore to HR and Landrum, on which she based her July 23, 2018, open records request. (*Id.* at 2228-30; DN 98, Def.'s Ex. 3, at 378-79, 385.) She indicated that she never received the e-mail on which she based her August 9, 2018, open records request. (DN 90, at PageID # 2232-33.) Instead, she testified that Davidson sent her verbatim the body of a November 23, 2016, e-mail between Walczak and Landrum that Walczak forwarded to Moore. (*Id.* at 2232-33, 2237-39.) Though she no longer had the original text from Davidson, she had forwarded the message to her attorney and still had a copy of it in those messages on which to base her open records request. (*Id.*; DN 98, Def.'s Ex. 3, at 380-81; DN 98, Pltf.'s Ex. 1.)

When questioned about why documents were not produced until the morning of her deposition or why the documents then-produced had been supplemented with additional texts messages in the weeks before the February 5 hearing, Butrum testified that she had provided all documents in her possession to her counsel in April 2018 after the March 6, 2018, evidentiary hearing. (DN 90, at PageID # 2244, 2279.) She stated that she believed her counsel had produced everything she provided to him. (*Id*. at 2256, 2279.) She also reaffirmed the bold and italicized statements by her counsel in her response to Louisville Metro's Renewed Motion for Sanctions that she never received or solicited documents or information from Davidson, though she stated that at the time she didn't remember some of the text messages above. (*Id*. at 2217-18.)

The Court also heard testimony from Davidson at the evidentiary hearing. Davidson testified that she did have an understanding that to the extent e-mails, calendar entries, etc., of

Director Walczak's were shared with her in her capacity as his assistant, those items were to remain confidential. (*Id.* at 2296.) She affirmed that she never had permission to share the contents of Walczak's e-mail, computer, or calendar entries with Butrum. (*Id.* at 2299-2300.) She admitted that she had unlimited access to Walczak's e-mail and computer calendar, but flatly denied that she shared "confidential private information" with Butrum. (*Id.* at 2298). She stated that Butrum asked her for items but that she told Butrum she could not provide them and suggested Butrum send an open records request. (*Id.* at 2299.) In response to questions by Louisville Metro's counsel, she testified as follows:

> Q: But I just want to make sure I'm understanding. It's your position today that you were not a conduit of information for Ms. Butrum to help her with her lawsuit as far as giving information about what was going on in Mr. Walczak's office or in his email? You have no idea how she got this information?
>
> A: Correct.

(*Id.* at 2309.) Davidson testified that Butrum did ask Davidson for information to assist her with her lawsuit, including for Davidson to help her with discovery—she testified she did not offer to assist. (*Id.* at 2312-13, 2316.)

The Court also heard testimony from Director Walczak. He indicated that he told Davidson that all aspects of and goings on in the office needed to be kept confidential. (*Id.* at 2343.) He also testified that he told Davidson not read anything that came in from HR or the County Attorney's office. (*Id.* at 2343-44.)

### F. Davidson's Text Messages

In its supplemental brief in support of its Motion, Louisville Metro indicated that since the February 5, 2019, hearing, Davidson filed suit against Louisville Metro alleging wrongful termination. (DN 110, at PageID # 2463.) As part of that litigation, Davidson submitted her cell phone for forensic analysis. (*Id.*) Louisville Metro then proffered a number of text messages

between Butrum and Davidson that had not been previously provided to Louisville Metro by Butrum or by either Butrum or Louisville Metro to the Court. (DN 110-4.) Though Louisville Metro produced all text messages recovered from Davidson's phone, it also highlighted certain messages in its Motion. The Court finds the following texts exchanged between Butrum and Davidson relevant to the instant motion:

| December 20, 2016 | Butrum: | Have you heard anything? My ears have been burning all day…..ha |
| | Davidson: | I haven't seen anything but I'm still wading through e-mails. |
| February 27, 2017 | Butrum: | Did the open records request get there |
| | Davidson: | not yet |
| March 13, 2017 | Butrum: | Lol…. Have they even opened the other emails from downtown? This should sprinkle on a little mor [*sic*] stress! |
| | Davidson: | They will see everything eventually. |
| March 16, 2017 | Butrum: | Anything juicy today …. |
| | Davidson: | Just the same old cluster[expletive] |
| March 24, 2017 | Butrum: | Keep an eye out for emails |
| April 9, 2017 | Butrum: | Did you see the e-mail response from SM? |
| | Butrum: | Did you see anything come through? SM never emailed me back but I know she read it… |
| | Davidson: | Nothing in John's box – I checked. |
| April 23, 2017 | Butrum: | I started reading a few of these redacted records. I wondered if you knew some of these names. |
| May 4, 2017 | Butrum: | Anymore email talk? |
| | Davidson: | Nope. |

| | | |
|---|---|---|
| May 10, 2017 | Butrum: | You here yet? I was curious to know if the e-mails have started....lol |
| May 15, 2017 | Butrum: | Any email? Is JW going to the mayors office in the morning? |
| | Davidson: | No, he has no meetings scheduled this week on his calendar with the Mayor's Office. |
| | Butrum: | Hmmm. I wonder what that means. Maybe the [*sic*] have stopped using email all together. |
| | Davidson: | I think so. |
| June 4, 2017 | Butrum: | Have there been any emails or feed back after it went public? |
| | Davidson: | No. I think they've been Todd [*sic*] not to talk in email. |
| June 7, 2017 | Davidson: | See if you have a memo written to Lia Murphy November 14 2016. In it he says that Rich resigned. |
| | Davidson: | In it he even says that he asked for Rich's "perspective" on the situation. |
| | Butrum: | [message appears corrupted] |
| | Butrum: | Plus that's old enough they would just be like WTF? Can you get that? I made copies of something I need you to read. Maybe we could get lunch off grounds? |
| | Davidson: | I can't provide documents like that. This is why the open records requests are so important. |
| August 18, 2017 | Butrum: | Did you see any emails today about witnesses |
| | Davidson: | No but I have been in and out of his inbox because Michelle is working now. |
| | Butrum: | Check |
| | Davidson: | I don't think so. Plus Michelle is still here. |

(DN 110, at PageID # 2465-73; DN 110-4, at PageID # 2621, 2654, 2672, 2675, 2692, 2719-20,

2752, 2775, 2784, 2799, 2837, 2846-477, 2898.)   Neither Party requested a supplemental

evidentiary hearing based on the new evidence provided by Louisville Metro.  (DNs 109, 110, 113.)

## II.     DISCUSSION

### A.     Legal Standard

The Court has inherent authority to issue sanctions where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' " *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)), or has engaged in conduct "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).[6]  The Court is not required to explicitly consider whether the conduct at issue could be sanctioned under the Federal Rules or any applicable statute prior to utilizing its inherent power to sanction a party or attorney, though a Court ordinarily should do so.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514 (6th Cir. 2002).  The Court's inherent authority should be used with restraint and discretion.  *Chambers*, 501 U.S. at 44; *Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013). Indeed, "[b]ecause the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred."  *Murrary*, 534 F. App'x at 486. However, the Court "should not shrink from exercising it when sanctions are justified by the circumstances." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).  In exercising

---

[6] Many cases explain that the Court should find bad faith where it concludes that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment."  *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997); *see also Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987). However, this oft-quoted language does not squarely apply to the conduct for which the operation of the Court's inherent authority has been requested in the instant case because the bad-faith conduct is not specifically tied to the merits of Butrum's underlying claims and rather to her conduct in discovery and during an evidentiary hearing conducted by the Court.

its inherent authority, the Court is vested with discretion to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44.

### B.    Analysis

The need for truthful testimony before the court is a cornerstone of the justice system. "Presenting deliberate falsehoods to a court is an offense of a higher magnitude. Courts are fora for determining the truth. The judicial system cannot function if parties are permitted to lie." *Adams v. Belden Commc'ns Co.*, No. CV-05-757-PHX-DGC, 2005 WL 3369434, at *8 (D. Ariz. Dec. 9, 2005). The instant motion implicates these fundamental principles.

Louisville Metro argued that Butrum should be sanctioned by the Court for her lack of candor in disclosing the facts and circumstances of her receipt of documents from Davidson; for her violation of the Court's Order regarding speaking with Davidson; for her lies to the Court during the March 6, 2018, hearing; for her false discovery responses; and for her false deposition testimony. (DNs 93, 110.) Louisville Metro emphasized in its post-hearing brief that its request for sanctions did not require or request that the Court to conclude that any particular document accessed by Butrum was privileged because its request was based on Butrum's misconduct, not the nature of the emails and documents themselves. (*Id.* at PageID # 2367.) In response, Butrum argued Director Walczak waived any attorney-client privilege by allowing his assistant full access to his e-mail and that Butrum's misunderstanding of the meaning of the word "document" and other conduct in this litigation did not rise to a level sufficient to impose sanctions pursuant to the Court's inherent authority. (DN 95, 109.) The Court does not agree.

Based on the facts as set forth above, the Court holds that Butrum did act wantonly and in bad faith and engaged in conduct tantamount to bad faith. The Court finds that Butrum lied under oath during her March 6, 2018, testimony when she stated that she did not receive documents from

Davidson or solicit information from her. Butrum's testimony during the February 5, 2019, hearing regarding her alleged belief about the meaning of the word "document" demonstrates that her prior testimony was an unacceptable attempt to play word games with the Court and to obfuscate the full extent of her communication with Davidson for her own benefit. Butrum obtained what she thought was an inside advantage given her friendship and communication with Davidson, a Zoo employee with access Butrum did not have. Butrum clearly intended to exploit her connection with Davidson to benefit herself in this litigation. The texts messages between Butrum and Davidson demonstrate that Butrum solicited both information and documents from Davidson both before and after the filing of the instant action. In fact, Butrum seems to have done so on so many occasions that it is simply not credible that her testimony otherwise was somehow the result of mere mistake, negligence, or a failure of memory. Indeed, Butrum asked Davidson to look for e-mails between Zoo leadership and to provide her copies of documents on multiple occasions. The Court finds particularly relevant to this conclusion Butrum's August 18, 2017, text message to Davidson asking whether Davidson had seen any e-mails regarding witnesses. (DN 110-4, at PageID # 2898.) Butrum's initial disclosures were filed the previous day, on August 17, 2017. (DN 15.) Because the Court concludes that Butrum gave false testimony to the Court regarding her solicitation of documents and information from Davidson, her deposition testimony to that effect must by necessity also have been false. Accordingly, the Court finds her false deposition testimony to be an additional basis for its finding of bad faith.

The Court's finding of bad faith is also based on the lack of candor in Butrum's verified discovery responses. (DN 65-3.) Butrum's response to the Zoo's request for an enumerated list of communications between her and Davidson, despite its detail and breadth, references receipt of only one screenshot from Davidson though she produced and testified to the Court that she

received at least two screenshots. Despite alleging in detail phone conversations and other conversations with Davidson regarding this lawsuit, Butrum's responses, like her testimony, convey that Davidson provided information with no encouragement or solicitation from Butrum. This is contradicted by the text messages between Butrum and Davidson. While it is not unreasonable for Butrum to have forgotten specific requests for information, the complete lack of indication that Butrum solicited information from Davidson constitutes a false response. Further, Butrum's consistent lack of candor in her testimony at the March 6, 2018, evidentiary hearing, her deposition testimony, and her discovery responses regarding her attempts to obtain information related to this lawsuit from Davidson suggest a pattern of deception constituting bad faith and wanton behavior.

Though Butrum objected in her response to Louisville Metro's supplemental brief to Louisville Metro's citation to text messages obtained from Davidson's phone given that they were obtained after discovery closed in this litigation, her objections are unpersuasive. The question before the Court is not the admissibility of the evidence at trial or any purported violation by Louisville Metro of the discovery deadline.[7] The question before the Court is whether Butrum gave false testimony and engaged in bad faith conduct in these proceedings. To investigate this allegation, the Court finds it appropriate to both consider and base its ruling on the supplied messages. The Court also finds unpersuasive Butrum's argument regarding the reliability of the text messages. The messages appear to overlap with text messages previously produced by Butrum. Further, despite raising the question of reliability, Butrum neither requested an additional evidentiary hearing regarding those messages nor requested additional time to respond to Louisville Metro's supplemental brief to allow counsel to more fully examine the new evidence.

---

[7] Indeed, the Court's instant opinion makes no ruling regarding the admissibility at trial of the text messages or the testimony of the witness who performed the forensic recovery.

Because of the breadth of Louisville Metro's argument regarding the nature of Butrum's bad faith, the Court also notes explicitly that its above finding is not based on a number of items on which Louisville Metro relied. The Court's finding is not based on Butrum having contacted Davidson immediately following the March 6, 2018, hearing. The Court and counsel spent some time at the conclusion of the March 6, 2018, hearing discussing the realm of potential relief to be afforded Louisville Metro and so the Court had not yet formally admonished Butrum in writing not to speak to Davidson about this lawsuit at the time Butrum contacted her. (DN 39, at PageID # 1297-1301.) No text messages or other evidence demonstrate any prohibited contact between Butrum and Davidson after the Court's March 20, 2018, Order (DN 42). Thus, the same does not rise to the level of bad faith. The Court's finding of bad faith is likewise not based on the open records requests detailed above. While the Court questions the strategy involved in requesting copies of documents of which Butrum already had a screenshot or the content of which she already knew, given Louisville Metro's statement in its post-hearing brief (DN 93) that it was not asking the Court to rule that any particular materials are privileged, the Court does not find that Butrum's open records requests constituted bad faith.

While Butrum argued that false testimony alone does not constitute the required bad faith necessary for the Court to impose sanctions, the authorities she cited for that proposition are distinguishable. In *Byrne v. Nezhat*, 261 F.3d 1075, 1085 (11th Cir. 2001), the Eleventh Circuit considered an appeal from a district court's award of sanctions for claims brought solely for the purposes of harassment without a factual basis. In reversing the district court's award of sanctions directly against the plaintiff, the Eleventh Circuit explained that the district court had based its decision "solely on the actions of counsel." *Id.* at 1123. While the district court had concluded that plaintiff made several false statements in affidavits and depositions, there was no evidence

plaintiff knew claims in her complaint were frivolous or that she had the requisite intent to harass defendants necessary to find bad faith. *Id.* at 1125. Here, it is not the conduct of Butrum's counsel that causes the Court to conclude Butrum acted in bad faith. It is her own false testimony to the Court in the hearing and in her deposition testimony and discovery responses that was designed to conceal her clandestine attempts to obtain material outside of the normal discovery process to assist her in this litigation. Therefore, in addition to being only persuasive and not binding authority, *Byrne* does not compel a different result than the one reached by the Court in the instant case.

The Court likewise finds distinguishable *Kadri v. Johnson*, No. 03-2562 M1/V, 2005 WL 3454330, *2-3 (W.D. Tenn. Dec. 16, 2005). In *Kadri*, in response to a plaintiff's petition for attorney's fees after a jury awarded him damages pursuant to Title VII, the defendant argued plaintiff's attorney's fees should be denied or reduced as a sanction for misconduct at trial. *Id.* at *2. Defendant argued that plaintiff had falsely testified at trial that he held a doctorate in computer engineering. *Id.* The court held that this was insufficient to constitute a "fraud upon the court." *Id.* at *3. This case is likewise distinguishable because Butrum's failure to give truthful testimony regarding the information she received is not the equivalent of a false statement about a party's educational background. Here, Louisville Metro was attempting to assess whether communications about Butrum's claims in this lawsuit that it believed to be protected by attorney-client privilege had been improperly disclosed when Butrum falsely testified about her relationship and communications with a then-current employee of Louisville Metro from whom she had been soliciting information related to her claims. Butrum's failure to give truthful testimony at the March 6, 2018, evidentiary hearing, in her discovery responses, and at her deposition delayed and disrupted this litigation by preventing Louisville Metro from investigating that pivotal issue in a

timely manner. As the Court previously stated, Louisville Metro has a right to defend this lawsuit, and the protection of the attorney-client relationship is a fundamental part of that process. (DN 42.) Accordingly, *Kadri* does not compel a different conclusion in this case.

Given that truthful testimony by witnesses and parties is of paramount importance to the function of the judiciary, the Court finds it necessary to sanction Butrum to deter future conduct of this type by Butrum or other litigants in the future. Sanctions pursuant to the Court's inherent authority are justified because Butrum's conduct does not fit squarely within the confines of any particular Rule of Civil Procedure under which the Court has the power to issue sanctions. While her false discovery responses could subject her to sanctions under Fed. R. Civ. P. 11 or 26(g), her false testimony at the March 6, 2018, evidentiary hearing and during her deposition are not addressed by those Rules. Therefore, only sanctions pursuant to the Court's inherent authority would allow the Court to address the full spectrum of Butrum's conduct. *See Chambers*, 501 U.S. at 51 (finding that sanctions pursuant to the Court's inherent authority was proper when "the conduct sanctionable under the Rules [of Civil Procedure] was intertwined with conduct that only the inherent power could address").

Having thus concluded that sanctions are appropriate, all that remains is for the Court to determine what sanction corresponds with Butrum's conduct. Louisville Metro advocates a number of sanctions in its motion. Specifically, it requested that the Court (1) award Louisville Metro its "costs associated with evaluating the extent of privileged communications Ms. Butrum has received, including attorney's fees"; (2) award Louisville Metro its "costs associated with responding to Open Records Requests evidencing Ms. Butrum's receipt of privileged information, including attorney's fees"; (3) require Butrum to produce all communications between herself and Nancy Davidson, regardless of the personal nature of the same; (4) exclude all information Butrum

had obtained through Nancy Davidson from trial of this matter; and (5) prohibit Davidson from testifying at trial of this matter. (DN 65, at PageID # 1515, 1532.) In its supplemental brief, Louisville Metro also requested that Butrum be required to submit all cell phones she has used since November 2016 for forensic analysis at her own expense. (DN 110, at PageID # 2458.) Butrum did not respond specifically to any category of sanctions other than to state that none should be permitted.

The Court concludes that the appropriate sanctions in this case are to (1) award Louisville Metro its attorney's fees incurred in filing the instant motion for sanctions; (2) exclude all information Butrum obtained from Nancy Davidson from trial of this matter; and (3) prohibit Davidson from testifying at trial of this matter. Though Louisville Metro requested its costs associated with evaluating the extent of privileged communications Butrum received and its costs associated with responding to Butrum's open records requests, the Court's instant ruling is not based on Butrum's receipt of privileged communications, it is based on her false testimony to this Court and in her discovery responses. Accordingly, the Court will only award Louisville Metro the attorney's fees related to the instant Motion. The evidentiary sanctions are a necessary complement to this award of fees because Butrum's conduct is only deterred if she is not be permitted to benefit in any way from her bad faith. Both because it appears that Louisville Metro has already obtained from Davidson a full copy of the text messages exchanged between Butrum and Davidson and because of the evidentiary sanctions above, the Court concludes it is not necessary to require any further disclosure by Butrum of communications between herself and Davidson.

### III.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1)      Louisville Metro's Renewed Motion for Sanctions (DN 65) is **GRANTED IN PART** and **DENIED IN PART**.  The Court imposes sanctions upon Butrum pursuant to its inherent authority as set forth in Paragraphs (2)-(4) below.

(2)      Butrum shall pay the reasonable costs and attorney's fees incurred by Louisville Metro in prosecuting the instant motion, including the costs associated with the February 5, 2019, evidentiary hearing and post-hearing and supplemental briefing.

    (a)      Louisville Metro's counsel shall submit billing records and corresponding declarations evidencing time spent on the instant motion on or before **April 24, 2020**.

    (b)      Butrum may respond to the amount requested by Louisville Metro on or before **May 22, 2020**.  Her response should only address the amount claimed by Louisville Metro and the sufficiency of its itemization.

(3)      Butrum is not permitted to introduce or rely upon any information or documents she obtained from Nancy Davidson at trial in this matter.

(4)      Butrum is not permitted to call Nancy Davidson at trial.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

March 30, 2020